[Crim. No. 4922.   Third Dist.   Jan. 29, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. CARY GLENN McVEY, Defendant and Appellant.

Hiram S. Dillin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Roger E. Venturi and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

JANES, J.—Defendant was charged by information with unlawful possession of marijuana in violation of section 11530 of the Health and Safety Code. He moved first to set aside the information under section 995 of the Penal Code and then, under section 1538.5 subdivision (i) of the Penal Code, to

suppress the evidence seized at the time of his arrest. In each instance the trial court ruled adversely to the defendant. He then entered a plea of guilty to the charge and appeals from the judgment, contending only that a search of his car and the seizure of marijuana therein, without warrant, were unreasonable, and that the evidence should have been suppressed. (Pen. Code, § 1538.5 subd. (m).) The factual record before the trial court, and before us, is the reporter's transcript of the preliminary examination.

At approximately 5 p.m. on December 15, 1967, Sergeant Johnson of the South Lake Tahoe Police Department and two detectives, in an unmarked car, were sitting and waiting in a parking lot adjacent to the Burger Bar, a hamburger drive-in. The officers had in their possession arrest warrants for six persons, each charged with violation of section 11556 of the Health and Safety Code (unlawful presence in a room or place where narcotics are being unlawfully smoked or used). The officers had no arrest or search warrant for the defendant or his car, but anticipated that some of the six suspects could be found at the Burger Bar at that hour. Although neither the defendant nor his car was previously known to any of the officers on sight, Sergeant Johnson had information, from other officers on the force, that the defendant ''was involved in the traffic of narcotics'' and that he ''was consorting with known narcotics offenders,'' and one of the detectives had information that the defendant's vehicle was a ''known narcotic traffic car. . . .''

As the officers sat in their car discussing the warrants and possible apprehension of the suspects, defendant drove his car into the parking lot, in a normal manner, and parked nearby. There were three or four passengers in the car, including two named in the arrest warrants. The officers eased the unmarked police vehicle up behind defendant's car and, as all occupants except defendant alighted from the right side of the vehicle, the detectives arrested the two persons named in the warrants. Sergeant Johnson moved to the left side of the 2-door car and defendant opened the driver's door and stepped out. Johnson, noting that the detectives had arrested two of the occupants, asked defendant for his driver's license and identification. Defendant ''. . . proceeded back to the left front door of the car and half-sat in the car. His right hand went to the area over the visor and his left hand withdrew from his pocket and placed something underneath the left front seat.'' He then stepped back to where Johnson was standing—about

8 feet from the car—and presented a proper driving license. Johnson "patted the defendant down" and found nothing.

At Sergeant Johnson's request, the detectives watched the defendant while Johnson walked to his own police car about 200 feet away, to obtain a flashlight. When Johnson returned with the flashlight, he searched under the driver's seat of the defendant's vehicle. Under the driver's seat, on the floor about 5 inches back from the front of the seat, the Sergeant found a tobacco pouch containing 8 marijuana cigarettes. Behind the pouch there were rags and a "lot of junk" which would have made it "almost impossible" to place the pouch under the driver's seat from the rear of the vehicle. The pouch was clean; the rags were dirty and in such condition that they appeared not to have been moved recently. The defendant was arrested.

Defendant contends that the search for and seizure of the marijuana cigarettes, without a warrant, was unreasonable, and that the evidence should have been suppressed. Neither the evidence nor the law favors his contention.

█ It is well established that "[C]ircumstances short of probable cause may nevertheless justify an officer in stopping motorists on the streets for questioning, and that, should the investigation then uncover reasonable cause to arrest a suspect, the officer may do so and conduct a reasonable incidental search." (*People* v. *Diaz* (1965) 238 Cal.App.2d 636, 638 [48 Cal.Rptr. 20] ; *People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) █ The factual situation presented to the officer must always include some suspicious circumstance in order to justify interference with an individual's freedom of movement, but there is no precise formula by which to determine whether the officer acted lawfully in stopping a motorist for questioning. "The reasonableness of an officer's action depends upon the facts and circumstances of the particular case. (Citations.) A mere hunch, without more, that a person may be involved in a criminal activity is, of course, insufficient." (*People* v. *Perez* (1966) 243 Cal.App.2d 528, 531 [52 Cal.Rptr. 514].)

█ Armed with arrest warrants for several of defendant's companions, and in possession of the official information they had[1]—including that linking defendant's car to the nar-

---

[1] Information from an official source is presumed to be reliable, unless manifestly shown to be otherwise, and a police officer may justifiably rely thereon. (*People* v. *Melchor* (1965) 237 Cal.App.2d 685, 690 [47 Cal.Rptr. 235].)

cotics traffic—the officers were amply justified in temporarily detaining and questioning all occupants of defendant's car. Sergeant Johnson saw the two detectives arrest only two of the passengers, with four arrest warrants remaining unserved; he was justified in asking the defendant to identify himself, in order to ascertain whether defendant, whose car had transported two of the suspects, was one of the remaining suspects. When the defendant presented his driver's license to Johnson, the sergeant then knew that he was talking to a person officially reported to be involved in the narcotics traffic and consorting with known narcotic offenders, and in fact chauffeuring two such suspects. Furthermore, he had just seen the defendant surreptitiously place some article under the front seat of his car.

Upon the factual situation then facing Sergeant Johnson, the trial court inferentially found, and we agree, that the officer had probable cause to believe that defendant possessed and was attempting to conceal contraband in his car. The search for and seizure of the marijuana cigarettes was reasonable and proper and the arrest was justified. ▮ It is of no significance that the search preceded the arrest; the fact that it comes before rather than after the arrest does not render it unlawful if probable cause to arrest existed at the commencement of the search. (*People* v. *Melchor, supra,* 237 Cal.App.2d at p. 688.) The search here was substantially contemporaneous with the arrest and was made at a time when Sergeant Johnson in fact could justifiably have arrested the defendant. (*People* v. *Doherty* (1967) 67 Cal.2d 9, 22 [59 Cal.Rptr. 857, 429 P.2d 177].)

We have examined the numerous California cases cited by defendant, all of which are distinguishable from the case at bench. In *Sibron* v. *New York* (1968) 392 U.S. 40 [20 L.Ed.2d 917, 88 S.Ct. 1889], relied upon heavily by defendant, a police officer had Sibron under observation continually from 4 p.m. to 12 midnight; during that period he saw Sibron talking with six or eight persons known by the officer to be narcotics addicts. The officer did not know Sibron and had no information concerning him. He overhead none of the conversations and did not observe anything pass between Sibron and the addicts or any other suspicious conduct of Sibron. Finally Sibron entered a restaurant, spoke there with three more known addicts, seated himself and ordered food. As Sibron was eating, the officer accosted him and told him to come outside the restaurant. Once outside, a search of his person disclosed sev-

eral envelopes of heroin.[2] Judgment of conviction was reversed, the Supreme Court holding that the heroin was unconstitutionally admitted into evidence. "Nothing resembling probable cause existed until after the search had turned up the envelopes of heroin." (392 U.S. at pp. 62-63 [20 L.Ed. 2d at p. 934].)

*Sibron* does not aid the defendant here. Upon its facts the Supreme Court simply rejected as unreasonable, in support of a seizure and search, the inference that those who talk with narcotics addicts are themselves engaged in the illicit traffic. The evidence in the case at bench, however, was of a different quality. Sergeant Johnson had information that the defendant "was involved in the traffic of narcotics" and that his vehicle was a "known narcotic traffic car." Coupled with the information available to the officer, the defendant's furtive move to conceal the contraband furnished probable cause for an arrest and a reasonable basis for the incidental search of the defendant's car. (*People* v. *Doherty, supra,* p. 22; *People* v. *Tillman* (1965) 238 Cal.App.2d 134, 140 [47 Cal.Rptr. 614].)

The judgment is affirmed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied February 26, 1969, and appellant's petition for a hearing by the Supreme Court was denied March 26, 1969.

---

[2]There was no evidence in *Sibron* which justified a self-protective search, nor did the officer at any time put forth the suggestion that he acted to protect himself. The trial court made no such finding, holding instead to the view that there was probable cause to arrest Sibron for some crime having to do with narcotics. (See footnote 21, 392 U.S. at pp. 64-65 [20 L.Ed.2d at pp. 935-936].)