[L.A. No. 32050. Sept. 8, 1987.]

In re JAMES D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Appellant, v.
JAMES D., a Minor, Defendant and Respondent.

**COUNSEL**

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth, J. Phillip Ashey and Brett G. London, Deputy District Attorneys, for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Jay M. Bloom, Maxine P. Cutler and David I. Friedenberg, Deputy Attorneys General, Joseph R. Symkowick, Roger D. Wolfertz, Taylor S. Carey, Ronald D. Wenkart, James P. Aynes, Bobbie F. Albanese, George Nicholson and George L. Bond as Amici Curiae on behalf of Plaintiff and Appellant.

Ronald Y. Butler, Public Defender, Frank Scanlon and Carl C. Holmes, Assistant Public Defenders, James Dean Allen, Richard Aronson and Donald J. Ayoob, Deputy Public Defenders, for Defendant and Respondent.

Wilbur F. Littlefield, Public Defender (Los Angeles), Alan H. Simon, Albert J. Menaster and Susan L. Burrell, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**LUCAS, C. J.**—The People appeal from a judgment dismissing a juvenile court petition after defendant's motion to suppress evidence was granted. We reverse and remand.

### I.

About 10:30 a.m. on February 28, 1983, Police Patrol Officers Jacobs and Natale saw defendant, carrying a book bag, walking on a sidewalk over a bridge. Because he appeared to be 15 to 16 years old, they decided to ask him why he was not in school, in order to determine if he was a truant. They therefore made a U-turn, drove back to where he was walking, and stopped their car. As he approached, both officers got out and asked if they could talk with him. Defendant said "sure" and walked over to them.

Officer Jacobs asked if defendant had identification; defendant said he had none. Jacobs then asked defendant from where he was coming, his destination, and where he lived. Defendant replied he had come from a friend's house, but could remember neither the friend's name, nor could he point out the house; he also said he was walking to a bus stop. He appeared nervous and hesitant, and his voice was shaky. When he suddenly shoved his hand beneath his jacket, Jacobs told him to slowly remove his hand, and then patted the outside of his clothing for weapons. He felt, and attempted to remove, a hard object. Defendant resisted, and both officers forced his arms to his side and jerked the object out of his inside pocket. A hairbrush and an open envelope fell to the ground. The officers saw in the envelope a piece of paper containing green dots; they recognized this to be LSD in blotter form. Defendant was arrested and charged with possession of a controlled substance.

At a juvenile court jurisdictional hearing, defendant moved to suppress the LSD as the fruit of an unlawful detention. (Welf. & Inst. Code, § 700.1.) He asserted he was in fact a 17-year-old high school graduate, hence not subject to any compulsory education law. He also asserted the officers had no reasonable basis on which to detain him; thus, he claimed, the contraband discovered in the patdown was tainted and must be excluded. The People argued the interaction here did not rise to the level of a detention and that, in any event, the "detention" and subsequent discovery were proper under state law.

Focusing on the officers' testimony that they "stopped" defendant, the trial court concluded the encounter amounted to a detention, and that under *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d

957], the detention was not justified. It expressly accepted the officers' testimony that they subjectively believed defendant to be 15 to 16 years old. The court concluded, however, that under *Tony C.* the officers lacked objective, reasonable suspicion that defendant was a truant. It therefore granted defendant's motion to suppress, and thereafter entered judgment dismissing the petition.

On appeal, the People argue the encounter was merely "consensual," and hence triggered neither the Fourth Amendment nor the corresponding provision of our state's Constitution. Alternatively, they claim, the trial court erred in holding the detention unlawful. The Court of Appeal affirmed, essentially ignoring the first claim, and holding that only an officer's *actual knowledge of a student's truant status* justifies a detention for the purpose of enforcing the truancy statutes.

## II.

By statute, all children aged six to sixteen must attend school full time (Ed. Code, § 48200; all further citations are to this code unless otherwise indicated) unless exempted from that requirement for various reasons (§§ 48220-48232). Similarly, *those between 16 and 18 must attend continuing education classes* for 4 hours each week (§ 48400)—or, if not regularly employed, for 15 hours each week (§ 48402)—unless specifically exempted from doing so. (§ 48410.) Section 48264 provides: "[A] peace officer . . . may arrest or assume temporary custody, during school hours, of any minor subject to compulsory full-time education *or to compulsory continuation education* found away from his home and who is absent from school without valid excuse . . . ." (Italics added.) Among those exempted from the continuing education requirement are (i) high school graduates, (ii) those who qualify for and have passed a "proficiency examination," and (iii) *those who still attend a public or private full-time day school.* (§ 48410, subds. (a), (e) & (b).)[1] ▪ Thus, in practical effect, the legislative scheme provides that unless *a person between the ages of 16 and 18* is (i) enrolled in a continuing education program, (ii) is a high school graduate or has passed the "proficiency examination," or (iii) qualifies under other miscellaneous exemptions (*ante*, fn. 1), he "*must be enrolled in a compulsory full-time education program and must be in school during school hours or else he is*

---

[1] Additional exemptions from compulsory continuing education requirements apply to those who (i) "[a]re disqualified for attendance upon these classes because of their physical or mental condition, or because of personal services that they must render to their dependents," or (ii) "[a]re satisfactorily attending a regional occupational program or center," or (iii) attend classes for adults for at least four hours per week, or (iv) have arrived from out-of-state within ten days before the end of the school term. (§ 48410, subds. (c), (d), (f) & (g).)

*subject to a section 48264 arrest.*" (*In re Miguel G.* (1980) 111 Cal.App.3d 345, 349 [168 Cal.Rptr. 688], italics added.)[2]

■ The effect of an arrest under section 48264 is very different from the effect of a typical criminal arrest. The emphasis is not on punishment but on correction of truancy, i.e., to promote attendance in order that students may be educated. A minor so restrained is to be delivered "either to the parent, guardian, or other person having control, or charge of the minor, or to the school from which the minor is absent," or to other designated persons whose role is that of counselor. (§ 48265.) The Education Code establishes a comprehensive mechanism for dealing with truants ranging from resort to various community programs, to special mediation programs. (§§ 48263.5, 48320 et seq.) Truants are not, except in aggravated circumstances involving "habitual" offenders, subject to the jurisdiction of the juvenile courts. (Welf. & Inst. Code, § 601, subd. (b); Ed. Code, § 48263.)

In establishing this scheme the Legislature expressed its intent to provide "intensive guidance and coordinated community services . . . to meet the special needs of pupils with school attendance problems . . . ." (§ 48320, subd. (a).) Its stated goal was "to encourage school districts and county offices of education . . . to adopt pupil attendance policies based on the active involvement of parents, pupils, teachers, administrators, other personnel, and community members" in order to, inter alia, provide procedures for "[j]oint efforts between law enforcement and schools, such as school level attendance review teams and periodic efforts to return truant pupils to school." (§ 48340, subd. (f).) With this overall picture in mind, we turn to the constitutional issues.

### III.

As noted, the trial court found there was an illegal detention under state law, i.e., under *Tony C., supra,* 21 Cal.3d 888. In *Tony C.* we addressed the distinction between (i) police-citizen encounters that trigger analysis under the Fourth Amendment and the corresponding provision of our state's Constitution (art. I, § 13), and (ii) police-citizen encounters that do not trigger constitutional concerns. Noting that "[t]he question . . . is where to draw the line," we *rejected* one suggested test—which would have focused on whether the suspect was free to leave the police officer's presence (21

---

[2] Statistics compiled by the State Department of Education disclose that a substantial majority of persons aged 16 to 18 qualify for exemption from compulsory continuing education by reason of "attendance upon a public or private full-time day school" (§ 48410, subd. (b)).

Cal.3d at p. 895)—and adopted instead "[a] more fruitful approach" focusing on the purpose of the encounter itself. *(Ibid.)*[3]

■ As we held after the trial court's ruling in this case, however, article I, section 28, subdivision (d) of the California Constitution controls all cases occurring after June 9, 1982. *(People* v. *Smith* (1983) 34 Cal.3d 251, 257-263 [193 Cal.Rptr. 692, 667 P.2d 149].) ■ Under *In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744], questions about exclusion of evidence must be resolved under federal, and not state law.

*A. "Consensual Encounters" Under Federal Law*

■ The trial court apparently assumed the initial encounter amounted to a detention, and proceeded to determine whether the "detention" was justified. As we explain below, it appears the court failed to recognize that under recent cases of both this and the United States Supreme Court, the encounter here may not have implicated federal constitutional concerns.

■ ■ ■ ■ "For purposes of Fourth Amendment analysis, there are basically three different categories or levels of police 'contacts' or 'interactions' with individuals, ranging from the least to the most intrusive. First, there are what Justice White [in *Florida* v. *Royer* (1983) 460 U.S. 491 (plur. opn.)] termed 'consensual encounters' *(id.* [460] U.S. at p. [506] [75 L.Ed.2d at p. 243, 103 S.Ct. at p. 1329]), which are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no 'seizure,' however minimal—and which may properly be initiated by police officers even if they lack any 'objective justification.' *(Id.* [460] U.S. at p. [497] [75 L.Ed.2d at p. 236, 103 S.Ct. at p. 1324].) Second, there are what are commonly termed 'detentions,' seizures of an individual which are strictly limited in duration, scope and purpose, and which may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' *([Id.,* 460 U.S. at p. 498].) Third, and finally, there are those seizures of an individual which exceed the

---

[3] We stated: "If the individual is stopped or detained because the officer suspects he may be personally involved in some criminal activity, his Fourth Amendment rights are implicated and he is entitled to the safeguards of the rules [governing justification for an investigative detention]. But similar safeguards are not required if the officer acts for other proper reasons. Such reasons are obviously too many and varied to recite, but they may be grouped in at least two general categories: (1) the officer may wish to question the person not as a suspect but merely as a witness to a crime, or (2) the officer may be engaged in one of 'those innumerable miscellaneous tasks which society calls upon police to do which have nothing to do with the detection of crime.' *(Batts* v. *Superior Court* (1972) . . . 23 Cal.App.3d 435, 438 [100 Cal.Rptr. 181]), such as giving aid to persons in distress, mediating domestic quarrels, assisting the elderly or the disabled, furnishing traffic advice or directions, and generally preserving the peace and protecting persons from harm or annoyance. (See *id.* at pp. 438-439.)" *(Tony C., supra,* 21 Cal.3d at pp. 895-896.)

permissible limits of a detention, seizures which include formal arrests and restraints on an individual's liberty which are comparable to an arrest, and which are constitutionally permissible only if the police have probable cause to arrest the individual for a crime. (*Id.,* [460] U.S. at p. [499] [75 L.Ed.2d at p. 237, 103 S.Ct. at p. 1325].)" (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].)

As Justice Kaus noted for a unanimous court in *Wilson, supra,* the *Royer* (*Florida* v. *Royer, supra,* 460 U.S. 491) decision affords considerable guidance about the high court's test for determining whether citizen-police interaction amounts merely to a "consensual encounter," or rises to the level of a "detention." The facts of *Royer* are explained in detail in *Wilson;* in essence the case involved the detention and arrest at an airport of a person who matched a so-called "drug courier profile." The high court's lead opinion noted: "*[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.* [Citations.] *Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification.* [Citation.] The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. [Citations.] He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds. [Citation.] If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed." (460 U.S. at pp. 497-498 [75 L.Ed.2d at p. 236], italics added.)

We observed in *Wilson,* "this passage gives some indication of the attributes of a consensual encounter, [but] it does not in itself set forth a clear constitutional standard for distinguishing such an encounter from a detention. That additional guidance is provided in a subsequent passage, where the lead opinion, in rejecting the state's contention that the 'entire encounter was consensual,' states: 'Asking for and examining Royer's ticket were no doubt permissible in themselves, but when the officers identified themselves as narcotic agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver's license and without indicating in any way that he was free to depart, Royer was effectively seized for the purposes of the Fourth Amendment. *These circumstances surely amount to a show of official authority such that "a reasonable person would have believed that he was not free to leave." United States* v. *Mendenhall* [(1980)] 446 U.S. 544,

554 (Opinion of Stewart, J.).' (Italics added [in *Wilson*].) ([460] U.S. at [pp. 501-502] [75 L.Ed.2d at p. 239, 103 S.Ct. at p. 1326].)" (34 Cal.3d at pp. 789-790.)

We concluded in *Wilson*: "In light of the emphasized language and the citation of *Mendenhall*, it is now clear that a substantial majority—and perhaps all—of the Supreme Court justices agree with the standard set forth by Justice Stewart in his separate opinion in that case: '[*A*] *person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.*'[4 ] (*United States* v. *Mendenhall,* supra, 446 U.S. at p. 554 [64 L.Ed.2d at p. 509].)" (34 Cal.3d at p. 790, fn. omitted, italics added.)

 From the record, it appears the trial court never considered the issue of whether the interaction here amounted to a detention or a mere "consensual encounter" under the proper standard as expressed in *Royer, supra*, 460 U.S. 491, *Mendenhall, supra,* 446 U.S. 544 [64 L.Ed.2d 497, 100 S.Ct. 1870], and *Wilson, supra,* 34 Cal.3d 777. Had the court done so, it may well have justifiably concluded this encounter was "consensual" under the high court's description of that term. Assuming, as did the trial court and the Court of Appeal, that a reasonable person in this circumstance would have felt himself not free to leave (and because there appears to be considerable confusion about the proper standard for determining the justification for such a presumed detention), we will proceed to determine the circumstances in which a "detention" to investigate a possible truancy violation is permissible.

### B. Detentions Under Federal Law

 As an initial matter we note that "[a]lthough each case [involving detention for questioning or limited investigation] must be decided on its own facts . . . [t]he guiding principle, as in all issues arising under the Fourth Amendment and under the California Constitution . . . is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' (*Terry* v. *Ohio* [(1968)] 392 U.S. [1, 19

---

[4] Immediately thereafter, Justice Stewart's opinion states: "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. [Citations.] *In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.*" (*Id.,* at pp. 554-555 [64 L.Ed.2d at p. 509], italics added.)

(20 L.Ed.2d 889, 994, 88 S.Ct. 1868)].)" (*Tony C., supra*, 21 Cal.3d at p. 892.)

The federal test for determining whether a detention is justified involves a weighing of (i) the public interest served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty (e.g., *Brown* v. *Texas* (1979) 443 U.S. 47, 50-51 [61 L.Ed.2d 357, 361-362, 99 S.Ct. 2637]) and (ii) the officer's reasonable suspicion that a crime has occurred or is occurring (*ibid.*).[5] ▮ On the latter point, the United States Supreme Court's cases provide, "certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime" (*Royer, supra,* 460 U.S. 491, 498 [75 L.Ed.2d 229, 237], paraphrasing *Terry* v. *Ohio, supra,* 392 U.S. 1), and that "reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop." (*Royer, supra,* 460 U.S. at p. 498 [75 L.Ed.2d at p. 237], paraphrasing *United States* v. *Brignoni-Ponce* (1975) 422 U.S. 873, 881-882 [45 L.Ed.2d 607, 617, 95 S.Ct. 2574].)

Relying on both federal cases and our own cases, we have acknowledged the same initial considerations (e.g., *Tony C., supra,* 21 Cal.3d at pp. 892-893) and, with regard to the second consideration, we have expressed essentially the same standard: "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience (*People* v. *Superior Court (Kiefer)* [(1970)] 3 Cal.3d [807, 827] [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]), to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. (*Terry* v. *Ohio, supra,* 392 U.S. at p. 22 [20 L.Ed.2d at pp. 906-907].)" (*Tony C., supra,* 21 Cal.3d 888, 893, fn. omitted.)

---

[5] As an alternative to the reasonable-suspicion requirement in some cases, the high court has stated it will allow seizures "carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers. [Citations.]" (*Brown, supra,* 443 U.S. at p. 51 [61 L.Ed.2d at p. 357].)

## 1. *Balancing Public and Private Interests*

 The initial area of inquiry is designed to determine whether the underlying conduct warrants detention for the purpose of investigation *in the abstract.* Courts have long recognized the importance of education to both the individual and to society (see, e.g., *Plyler* v. *Doe* (1982) 457 U.S. 202, 221-222 [72 L.Ed.2d 786, 102 S.Ct. 2382]; *McCollum* v. *Board of Education* (1948) 333 U.S. 203, 231 [92 L.Ed. 649, 661, 68 S.Ct. 461, 2 A.L.R.2d 1338] (Frankfurter, J., conc.)), and defendant does not question the propriety of the compulsory education laws (which, as noted, cover persons aged six to *eighteen*) as a legitimate means of achieving that objective. As noted above, the legislative scheme is directed toward reforming and returning the truant student to school, and not toward punishment or imposition of traditional criminal sanctions. We conclude that the governmental interest in enforcing its truancy laws in order to achieve its educational goal, is substantial.

Second, we agree with the People and various amici curiae that investigation and "arrest" pursuant to section 48264 substantially advance the public interest in enforcing the state's compulsory education laws. Defendant's suggestion that such goals can be achieved by "arrest" of persons *actually known* to be truants is, as amici curiae State Superintendent of Public Instruction Bill Honig et alii point out, highly questionable. Los Angeles Unified School District, we are told, has about one-half million students enrolled. Like amici curiae, we find it "ludicrous to assume that law enforcement and school officials would have the slightest chance of intercepting those few students [actually] known by them to be truant." We therefore agree that a section 48264 detention for the purpose of investigating whether a person is a truant is, as a practical matter, the *only effective means* of identifying and locating truants and hence substantially advances the state's compulsory education goals.

Finally, on balance, we find the degree of interference with personal liberty occasioned by a "truancy detention" to be slight. Questioning must, of course, be strictly limited to the purpose of the stop. (See, e.g., *Brignoni-Ponce, supra,* 422 U.S. at pp. 881-882 [45 L.Ed.2d at pp. 616-617].) As explained above, the sole purpose of a truancy "arrest" is to return the absent student to school as expeditiously as possible. Therefore, "[t]he 'arrest' that takes place under section 48264 is a severely limited type of arrest and may not be used as a pretext for investigating criminal matters." (*Miguel G., supra,* 111 Cal.App.3d at p. 349; *In re Jorge S.* (1977) 74 Cal.App.3d 852, 857 [141 Cal.Rptr. 722].) Likewise, the sole purpose of a truancy *detention* is to investigate whether a particular person is a truant, and if he is in fact a truant, to place him under a section 48264

"arrest" in order to return him to school. We are unwilling to conclude that the limited and brief intrusion required for such an investigative detention outweighs the legitimate governmental interest here involved.[6]

### 2. *Reasonable Suspicion*

The second area of inquiry is designed to determine whether sufficient objective facts support the detention in the case at hand, and thereby to guard against arbitrary invasion of privacy. As noted above, we perceive no appreciable difference between the cases of this court, and the United States Supreme Court, on the standard to be applied. A detention to investigate whether a person is a truant is justified when there are specific and articulable facts causing an officer to suspect, reasonably, that a *truancy violation*[7] is occurring, and that the person he intends to detain is a truant. (*Tony C., supra,* 21 Cal.3d at p. 893; *Brown, supra,* 443 U.S. at p. 51 [61 L.Ed.2d at p. 362]; *Brignoni-Ponce, supra,* 422 U.S. at pp. 881-882 [45 L.Ed.2d at pp. 616-617].)

Defendant asserts that a truancy detention premised in part on "youthful appearance," fails to provide a sufficiently objective standard to guard against arbitrary seizures. In essence, he claims, such a detention falls short of the "reasonable suspicion" requirement.

We reject defendant's suggestion that youthful appearance is an inherently subjective factor and hence cannot serve as a basis for detention. To the contrary, a suspected truant's youthful appearance is a matter that can be objectively verified by the court. The judge at a suppression hearing should be able to determine, from looking at the defendant and taking into account any changes in his appearance since the event, whether the officer's estimation of age was reasonable. Of course there may be cases in which the officer's estimation about an individual's age turns out to be wrong, or in which the youth is, like here, within that group of minors excepted for various reasons from full-time school attendance requirements (*ante,* pp. 909-910). But those after-discovered facts would not render the officer's on-the-spot estimation of the individual's age unreasonable, nor would they

---

[6]Defendant asserts that any detention standard less than "actual knowledge of truancy" will result in wholesale arbitrary interference with citizens. We believe, as explained below, that the traditional test for determining the justification for a detention applies in this context, and sufficiently guards against the perceived danger.

[7]Previous cases generally speak of specific and articulable facts showing a particular person is committing or has committed a "crime." Defendant's observation that truancy technically does not amount to a crime in this state (Pen. Code, § 15) does not suggest the "specific and articulable facts" test is inapplicable in truancy cases. As we have explained above, truancy is, on balance, conduct that warrants detention for the purpose of investigation, and we conclude the "specific and articulable facts" test is easily adapted to the truancy context.

detract from other articulable facts supporting detention that were perceived by the officer.

Youthful appearance, we conclude, is a highly relevant and objectively verifiable *factor* in determining the propriety of a truancy detention. Moreover, as the People observe, a proper detention to investigate whether a person who appears to be between six and eighteen is a truant cannot be based on youthful appearance alone. Among other limitations, such a detention would be permissible only during school hours.

*C. Propriety of the Detention in this Case*

As an initial matter, we reiterate it is far from clear that a detention occurred under the *Royer* test. (*Ante,* pp. 911-913.) Assuming, nevertheless, that a detention occurred, the trial court's determination that the officers lacked reasonable suspicion to justify a detention cannot stand.

In the course of the suppression hearing, the trial court advanced at least three bases for its conclusion that the officers lacked reasonable suspicion to detain defendant. We conclude *none* of the court's explanations supports its conclusion that the officers lacked reasonable grounds to suspect defendant might be a truant.

Initially, the court suggested the officers acted unreasonably because, it asserted, they based their suspicion on defendant's "general appearance *and nothing more*." (Italics added.) Although "youthful appearance *and nothing more*" would not justify a detention to investigate whether a person is a truant, there was in fact "something more" in this case. School was in session, and defendant, carrying a book bag, was seen walking on a bridge at least three miles from the nearest school.

Elsewhere in the hearing transcript the court suggested the officers lacked reasonable suspicion because, in addition to (i) defendant's "youthful appearance" and (ii) other objective facts noted above of which they were aware, the officers needed "some *other reason* to believe [defendant] was *involved in a specific crime*." (The court made this comment in the course of distinguishing cases cited by the People, all of which, the court suggested, involved (a) some kind of *actual notice*—"through the air waves or police radios"—(b) that "a *certain person* . . . had committed [a *crime*].") Contrary to the trial court's understanding of the law, officers need no "actual notice" that any particular person has committed "a crime" (nor, for that matter, that a particular person is *in fact* a truant), in order to justify a detention to investigate whether a truancy violation is occurring.

Finally, at the conclusion of the hearing the court suggested—without explicitly saying so—that it considered the officers' estimation of defendant's age unreasonable, and that therefore, they lacked reasonable suspicion to justify the detention. In so "ruling," the court suggested that no reasonable officer would have concluded defendant was *16 years old* or younger.

Contrary to the court's apparent understanding of the reach of the compulsory education laws, those statutes—including the "arrest" provision (§ 48264)—apply not only to persons between 6 and 16, but also to those between 16 and 18. By implicitly concluding that no reasonable police officer would have thought defendant to be *16* or younger, the court never focused on the real question to be answered here, i.e., whether under all the circumstances the officers reasonably believed this defendant to be school age—between 6 and *18*—and hence subject to full-time education requirements. (*Ante,* pp. 909-910.)

Accordingly, we must remand the matter to the trial court for a proper determination of whether, under the circumstances, there existed reasonable suspicion to justify a detention.[8] As a preliminary matter, however, the court should also reconsider—in light of *Wilson, supra,* 34 Cal.3d 777, and *Royer, supra,* 460 U.S. 491,—whether the initial police-citizen interaction here rose to the level of a detention, or amounted merely to a "consensual encounter" which, as noted, does not trigger Fourth Amendment concerns.

The judgment dismissing the petition is reversed and the cause is remanded to the juvenile court for further proceedings consistent with this opinion.

Mosk, J., Panelli, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.

**BROUSSARD, J.**—I dissent. The judge of the juvenile court viewing James D. determined that it was unreasonable to conclude he was under the

---

[8] For the trial court's guidance on remand, we note that we would reject any claim that the police-citizen contact here exceeded the permissible scope of a "truancy stop." Our review of the record discloses the officers' conduct and questions were within the strictly limited purposes of the detention, i.e., to determine whether defendant was a truant. (Cf., *Brignoni-Ponce, supra,* 422 U.S. at pp. 881-882 [45 L.Ed.2d at p. 617] ("The officer may question the driver and passangers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.").) The officers first asked for defendant's identification; being told he had none, they asked his destination and from whence he had come. All of these questions reasonably were designed to determine whether defendant was a truant, and we would not conclude the questioning exceeded the permissible scope of the stop merely because we might be able to fashion more direct and piercing questions that may have gone to the root of the matter a bit sooner. Finally, the delay does not appear to have been excessive. The encounter described could not have lasted more than a minute before defendant's ill-timed sudden motion into his jacket.

age of 16, that the police officers did not have a reasonable suspicion that he .was a truant, and that the detention was unlawful. The majority conclude that during school hours persons appearing to be between the ages of 16 to 18 may be detained on public streets for investigation of truancy solely on the basis of their youthful appearance and that because the trial court did not determine whether it was reasonable to conclude that James was under 18, its order must be reversed.

In my view, the trial court was correct in concluding that the crucial issue was whether the officers could reasonably conclude that James was under the age of 16, not 18, and the trial court's order should be affirmed.

Section 48264[1] provides that a peace officer may arrest or assume temporary custody "during school hours" of any minor "subject to compulsory full-time education or to compulsory continuation education" found away from his home and who is absent from school without valid excuse.

It is settled that the guiding principle in cases involving temporary detention for questioning, "as in all issues arising under the Fourth Amendment and under the California Constitution . . . is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' (*Terry* v. *Ohio, supra,* 392 U.S. at p. 19.)" (*In re Tony C.* (1978) 21 Cal.3d 888, 892 [148 Cal.Rptr. 366, 582 P.2d 957].) As was pointed out in *Tony C.,* because of the limited scope of a detention for questioning, it need not be supported by the actual belief in guilt required to arrest. "Yet the interest at stake is far from insignificant: it is the right of every person to enjoy the use of public streets, buildings, parks, and other conveniences without unwarranted interference or harassment by agents of the law. . . . 'A police officer may not use the authority of his uniform and badge to go around promiscuously bothering citizens.'" [21 Cal.3d at pp. 892-893.)

"Detentions," seizures of an individual which are strictly limited in duration, scope and purpose, may be undertaken by the police "'if there is an articulable suspicion that a person has committed or is about to commit a crime.'" (*Florida* v. *Royer* (1983) 460 U.S. 491, 498 [75 L.Ed.2d 229, 237, 103 S.Ct. 1319]; *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].) In order to justify an investigative stop or detention, "the circumstances known or apparent to the officer must include specific or articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively

---

[1] All statutory references are to the Education Code.

reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience . . . to suspect the same criminal activity and the same involvement by the person in question. The corollary to this rule, of course, is that an investigative stop or detention predicated on mere curiosity, rumor, or hunch, is unlawful, even though the officer may be acting in complete good faith." (*In re Tony C., supra,* 21 Cal.3d at p. 893, fn. omitted.)

In order to determine whether the presence on the public streets during school hours of a person appearing to be 16 or 17 furnishes a reasonable suspicion of truancy, we must look at the statutes governing school attendance and truancy.

Full-time school attendance is required only of those between 6 and 16, and there are a number of exemptions. Obviously this portion of section 48264 permitting "arrest" of minors subject to compulsory full-time education does not warrant detaining persons who are apparently 16 and 17 years old.

Thus, the detention of 16- and 17-year-olds during school hours for truancy investigation can be justified, if at all, on the ground that they are subject to "compulsory continuation education" and are in violation of their obligation. Section 48400 requires 16- and 17-year-olds to attend special continuation education classes for at least 4 hours per week for the school term. Section 48402 requires 15 hours per week for those not regularly employed. However, there are numerous exemptions for physical and mental health, personal services that must be rendered to dependents, attendance at a regional occupational program or center, attendance at adult school, special programs for mentally gifted students, for suspended and expelled students, leaves of absence for study travel or work, arriving from out of state within 10 days of the end of the semester, excuses applicable to persons under 16, and attendance at part-time classes of certain agencies. (§§ 48410, 48223-48227, 48230, 48232, 48900.)

In addition to the exempt 16- and 17-year-olds, there may be numerous others of that age who may be away from school premises during normal school hours without being truants, such as those on an errand for a school official, going to a doctor's or dentist's appointment, in transit to an athletic event, returning home because of injury or illness, or engaging in public service in conjunction with school activities. (§ 48205; *In re Tony C., supra,* 21 Cal.3d 888, 897.)

There is one other group that is exempt from compulsory continuation education, namely, those in attendance at a full-time public or private day

school. (§ 48410, subd. (b).) Assuming that this group would be truant if away from the school premises during normal school hours without valid excuse, it does not follow that when during school hours a person appearing to be 16 or 17 is observed in a public place there is a reasonable suspicion that the person is a truant.

There is no doubt that the Legislature has established a clear policy in favor of full-time education of our youth and against truancy. However, as to 16- and 17-year-olds that policy must be viewed in the light of the statutory provisions permitting 16- and 17-year-olds to opt in favor of obtaining jobs in which case the statutes require only 4 hours per week school attendance. In addition 16- and 17-year-olds who do not obtain jobs may opt in favor of 15 hours per week rather than full-time education. Because of the options provided, it is apparent that the legislative goal of full-time education for 16- and 17-year-olds is based largely on the concept of voluntary adoption of the goal by the student.

Weighed against the limited legislative policy applicable to 16- and 17-year-olds is the interest of persons exempt or excused from full-time education "to enjoy the use of public streets, buildings, parks and other conveniences without unwarranted interference or harassment by agents of the law." (*In re Tony C., supra,* 21 Cal.3d 888, 893.) And when the basis of police detention is solely appearance of 17 or under, the concerned interests include not only those of persons under 18 but also youthful appearing persons who may be 18 or older.

In weighing the statutory policy of providing for arrest of truants against the constitutional interests involved, we must also bear in mind that the provisions of section 48264 do not provide that peace officers shall or should arrest truants but only that they "may" arrest or assume temporary custody of truants. Use of the permissive rather than the imperative suggests that the legislative policy of enforcing truancy provisions is limited and to be enforced only in the clearest of situations, those where the student is under 16 and required to attend fulltime. Coupled with the legislative policy to encourage voluntary full-time education of 16- and 17-year-olds rather than requiring full-time education, the use of the permissive can only further indicate that the legislative policy to compel full-time attendance of that age group is a limited policy.

The limited policy reflected by the above considerations suggests that the provision of section 48264 permitting arrest of minors "subject to . . . compulsory continuation education" should be interpreted literally to apply only to those who have opted to forego full-time education and to enroll in the limited continuation education program and should not apply to any

exempt persons including those exempt by reason of enrollment in full-time education. The Legislature may have felt that it would be counter-productive to arrest 16- and 17-year-olds enrolled as full-time students because the arrests would drive truants to more limited programs. However, it is unnecessary for me to determine the issue because the majority do not discuss it and even if the statute permits arrest of students not enrolled in the limited programs, the detention in the instant case may not be upheld.

Weighing the competing interests, we must also recognize that there is little that the youthful appearing person who is over 18 or who is exempt or excused from full-time education requirements can do to avoid detention during school hours short of giving up his right to be present in public places. If he chooses to appear in public places, he runs the risk of regular and continued detentions for investigation of truancy. A high school graduate like James should carry his diploma at all times during school hours.

But even assuming that there was a strong legislative policy to require full-time school attendance of 16- and 17-year-olds, we are still confronted with the basic rule that before an investigative stop or detention is permitted, as we have seen, it must be objectively reasonable for the officer to suspect that activity relating to crime is occurring or about to occur and that the person detained is involved in the activity. Because there are so many appearing to be 16 or 17 years old who are 18 or over or are exempt or excused from full-time education requirements, it is not reasonable for an officer to assume that, when a person appearing to be 16 or 17 years old is observed in a public place during school hours, there is a substantial probability that the person is a truant. (See *United States* v. *Brignoni-Ponce* (1975) 422 U.S. 873, 885-887 [45 L.Ed.2d 607, 618, 620, 95 S.Ct. 2574] [appearance of Mexican ancestry does not furnish a reasonable suspicion for stop to determine whether they are illegal aliens].)

It may be true that a majority of 16- and 17-year-olds enroll in full-time educational programs, but that is not the crucial figure. At any given time only a small percentage of those students will be truant and in public places. The crucial comparison in determining reasonable suspicion where the sole ground for detention is youthful appearance is the relationship of truants in public places during school hours to persons having youthful appearance who are not truants. I am satisfied that during school hours a person's appearance reflecting an age of 16 or 17 without more does not furnish a reasonable suspicion of truancy.

The trial court observing James determined that it was unreasonable to conclude that he was under the age of 16 and that the police officers did not have a reasonable suspicion that he was a truant. The court held that the

detention was unlawful, and we should affirm the court order granting the motion to suppress.

One further point requires discussion. Although the majority appear to recognize that the trial court could reasonably determine that the officers detained James when they stopped him, they also suggest that the trial court could have found that there was no detention until later. The only issue properly before us is whether the trial court could properly find that the stop was a detention, and we should not reach out to determine whether the trial court could properly make a contrary finding.

Moreover, I believe that under the applicable test the facts compel a finding that a detention rather than a consensual encounter occurred when the officers stopped James. A detention occurs " 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " (*Wilson* v. *Superior Court, supra,* 34 Cal.3d 777, 790.) The officer drove by James and then made a U-turn pulling up in front of him as he walked along an apparently otherwise deserted sidewalk. The officers got out of their squad car as he walked up to them. According to the officers, they stopped him, they stood to his left and right and commenced asking questions as to identity, his residence, where he was coming from, and his destination. According to James, the officers first asked if they could talk with him, and he wanted to be cooperative. After a few questions, the officers searched him. In discussing whether there was a detention the judge focused on this evidence, including the unambiguous statements of the officers that they stopped him. In the circumstances, I do not believe that many people would have felt free to leave without answering the officers' questions. The trial court's order should be affirmed.