[No. B038931. Second Dist., Div. Five. Feb. 14, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
GREGORY ALLEN BANKS, Defendant and Appellant.

**COUNSEL**

Charles Downing, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Edward T. Fogel, Jr., Donald J. Oeser and John A. O'Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TURNER, J.—**

## I. INTRODUCTION

Defendant pled no contest to a charge of possession of cocaine (Health & Saf. Code, § 11360) after the denial of his motion to suppress the contraband pursuant to Penal Code section 1538.5. On September 19, 1988, defendant received a two-year state prison sentence and filed a notice of appeal on September 28, 1988. The correctness of the trial court's order denying the motion to suppress evidence pursuant to Penal Code section 1538.5 is the sole issue raised on appeal. Because the motion was correctly denied, the judgment is affirmed.

## II. Suppression Motion Evidence

It was stipulated between the parties that there was no arrest or search warrant. Two witnesses testified for the prosecution. First, Long Beach Police Officer Michael Dugan testified that on March 2, 1988, he was assigned to the "Metro detail." For several weeks prior to March 2, Long Beach police officers had been "working" an apartment complex at 241 East Artesia because there had been numerous citizens' "complaints regarding narcotics traffic, coming from the . . . complex." On the night prior to defendant's arrest, Officer Dugan had made other narcotics arrests at the building. Ten or fifteen minutes prior to defendant's arrest Officer Dugan saw a man walk into the aforementioned Artesia Boulevard complex and into apartment number three. The man was arrested for possession of rock cocaine after leaving the apartment building. This arrest occurred shortly before defendant arrived at the apartments.

While observing the complex, Officer Dugan saw defendant stop his car in front of the apartment building. After the car horn sounded, an unidentified man walked out to the public sidewalk. The man bent down at the waist, looked at defendant who was the driver, and waved the car over to the curb. Defendant parked the car and walked over to the other man. The two men then walked into apartment number three. (This is the same apartment where the other person who was arrested on March 2 had exited from several minutes earlier.)

Two minutes after he entered, defendant exited apartment number three. As he was walking out of the apartment, defendant looked into his right palm and put his right hand into his pants pocket. He quickly descended the stairway and as he reached the sidewalk looked both east and west on Artesia. Defendant then trotted to his car and then drove away.

When cross-examined, Officer Dugan testified that defendant's conduct was consistent with that he had observed on innumerable occasions of persons purchasing rock cocaine. Officer Dugan then broadcast a description of defendant and his white compact car which had damage on the left front part of the automobile. Officer Dugan also stated in the radio broadcast that he believed that defendant had purchased rock cocaine in part because there had previously been "arrests" of persons coming out of apartment number three. Officer Dugan directed other officers to stop defendant's car "for a narcotics investigation."

The second witness to testify was Long Beach Police Officer Craig Patterson. He heard Officer Dugan's radio transmission. He saw defendant's car turn from Artesia Boulevard to Long Beach Boulevard and ultimately stop

in the driveway of a motel. After defendant parked his car, Officer Patterson stopped his unmarked police car to the rear of defendant's automobile. Defendant got out of his car and looked in the officer's direction. Defendant had a surprised look on his face, immediately reached into his right front pants pocket, and quickly reentered his car. Officer Patterson ran towards defendant's car. Prior to saying anything to defendant, Officer Patterson saw defendant hand a "small plastic zip-lock baggie containing a white substance . . ." to a woman who was in the front seat of defendant's car. She threw the baggie to the car floor. Defendant was only then directed to come to the unmarked police car where he was placed in "custody." Officer Patterson's partner detained the woman and "recovered the contraband."

### III. DISCUSSION

Because substantial evidence supports the trial court's order denying the motion to suppress, the judgment must be affirmed. (*People* v. *James* (1977) 19 Cal.3d 99, 118 [137 Cal.Rptr. 447, 561 P.2d 1135].) Substantial evidence supports the implied finding that probable cause existed to believe that the envelope handed by defendant to the passenger contained contraband. Because probable cause was present, a warrantless search of the passenger compartment of the car could be conducted. (*United States* v. *Ross* (1982) 456 U.S. 798, 823 [72 L.Ed.2d 572, 592-593, 102 S.Ct. 2157].) In evaluating the validity of the seizure, this court must apply federal, not state law. (*In re James D.* (1987) 43 Cal.3d 903, 911 [239 Cal.Rptr. 663, 741 P.2d 161].)

 First, until defendant was arrested after the woman in the passenger seat threw the plastic bag to the floor, there was no implication of any Fourth Amendment rights and the exclusionary rule did not proscribe any official conduct. Prior to the time that she threw the cocaine to the floor between the seat and the door panel, defendant had not been stopped or detained so as to constitute a seizure of the person within the meaning of the Fourth Amendment. (*In re James D., supra*, 43 Cal.3d at pp. 911-913.) When a police officer walks towards a suspect who is getting out of a car, there is no restraint of liberty so as to bring the exclusionary rule into play. (*People* v. *Divito* (1984) 152 Cal.App.3d 11, 14 [199 Cal.Rptr. 278]; *People* v. *Sandoval* (1985) 164 Cal.App.3d 958, 963 [211 Cal.Rptr. 1].) Nor was the act of stopping the police car behind defendant's car under the facts of this case a restraint on liberty for Fourth Amendment purposes. (*People* v. *Perez* (1989) 211 Cal.App.3d 1492, 1495 [260 Cal.Rptr. 172].)

Second, after the passenger threw the zip-lock bag to the floor, probable cause existed to seize it. As previously noted, this court must apply

federal law, and the standard under the United States Constitution for determining the existence of probable cause is whether "given all the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois* v. *Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317].) Under federal law, this test of probable cause applies to warrantless automobile searches. (*Brinegar* v. *United States* (1949) 338 U.S. 160, 175-176 [93 L.Ed. 1879, 1890, 69 S.Ct. 1302].) ■■ Probable cause to believe that the zip-lock bag contained cocaine existed because the officer reasonably suspected that apartment number three, the residence defendant entered and exited, was being used to sell drugs and thereafter defendant made a furtive movement in an effort to dispose of the plastic baggie.

■ As to the first factor, defendant's presence at apartment number three, absent a special connection with the premises where criminal conduct is reasonably believed to be occurring (*Michigan* v. *Summers* (1981) 452 U.S. 692, 695, fn. 4 [69 L.Ed.2d 340, 345, 101 S.Ct. 2587]), merely being present or leaving a place where drugs are sold does not constitute probable cause to search. (*Ybarra* v. *Illinois* (1979) 444 U.S. 85, 91, fn. 3 [62 L.Ed.2d 238, 245, 100 S.Ct. 338].) However, a single contact with a residence where drug activity is ongoing, when coupled with "other suspicion of the person in question, may together amount to probable cause." (2 LaFave, Search & Seizure (2d ed. 1987) § 3.6(c), p. 57.) In *Ybarra,* the court identified several factors which might justify a search of a person merely present at a place where a search warrant is being executed. Among those considerations were when officers observed "gestures indicative of criminal conduct" or "movements that might suggest an attempt to conceal contraband." (*Ybarra* v. *Illinois, supra,* 444 U.S. at pp. 90-91 [62 L.Ed.2d at p. 245].) In *Sibron* v. *New York* (1968) 392 U.S. 40, 66-67 [20 L.Ed.2d 917, 937, 88 S.Ct. 1889], the Supreme Court held that "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea,* and when coupled with special knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." Professor LaFave notes: "Thus, if the police see a person in possession of . . . some object which is not identifiable but which because of other circumstances is reasonably suspected to be contraband, and then observe that person make an apparent attempt to conceal that object from police view, probable cause is then present." (2 LaFave, *supra,* at p. 58.) The foregoing statements of law establish the rule that association with premises where illegal conduct is occurring plus later furtive movements as occurred in the present case constitute probable cause to arrest or search.

■ In this case, the officers reasonably concluded that drug trafficking was occurring in apartment number three. Defendant's conduct within

apartment number three was contemporaneous with the presence of illegal activity. Another person who had exited apartment number three had just been arrested for possession of drugs. A factor in evaluating the incriminating nature of defendant's association with apartment number three is "whether the known criminal activity was contemporaneous with the association." (*United States* v. *Hillison* (9th Cir. 1984) 733 F.2d 692, 697.) Moreover, when defendant entered the apartment, he did so with another person who had signaled to defendant. In *United States* v. *Barlin* (2d Cir. 1982) 686 F.2d 81, 87, the court of appeals accorded weight to the consideration of the fact that although a suspect was innocuously present in a public place, he entered the residence in tandem with two persons who were obviously drug traffickers. The fact that defendant went to a private dwelling where sales occurred as distinguished from a place open to the public such as a store increases the incriminating nature of the circumstances. (*United States* v. *Savides* (N.D.Ill. 1987) 664 F.Supp. 1544, 1550.) Finally, Officer Dugan testified that the area where the apartment was located was a high crime area and "[p]ast incidences of numerous law violations of a particular character in a given area definitely constitute a fact that officers may consider in the totality of circumstances they rely upon in arriving at a conclusion that they have probable cause . . . ." (*United States* v. *White* (D.C. Cir. 1981) 655 F.2d 1302, 1304 [211 App.D.C. 72].) The officers in this case reasonably could have suspected that not only was narcotics activity occurring but also that defendant was involved in that illegal conduct.

Additionally, defendant's act of handing the zip-lock bag to the car passenger and her ensuing throwing of the bag to the floor is of significance. ■ When coupled with other evidence, efforts to destroy evidence are sufficient to justify an arrest. (*People* v. *McVey* (1969) 269 Cal.App.2d 240, 245 [74 Cal.Rptr. 648]; *People* v. *Gaines* (1968) 265 Cal.App.2d 642, 646 [71 Cal.Rptr. 468].) ■ Moreover, the fact that a zip-lock plastic bag was thrown is further evidence of unlawful conduct. Such bags are routinely used to carry rock cocaine. The officers had more than sufficient facts before them to seize the envelope.

Finally, it follows that since there was probable cause to seize the cocaine, there was likewise sufficient justification to arrest defendant. Because he was lawfully arrested, the passenger compartment of the car could be lawfully searched incident to his arrest without a warrant. (*New York* v. *Belton* (1981) 453 U.S. 454, 460 [69 L.Ed.2d 768, 774-775, 101 S.Ct. 2860].) There is some uncertainty in the present evidentiary record concerning whether defendant was temporarily detained within the meaning of *Terry* v. *Ohio* (1968) 392 U.S. 1, 26-27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868] or was subjected to an arrest immediately after Officer Hammond saw the passenger throw the envelope between the passenger seat and the car door. Officer

Patterson testified that he took defendant into "custody" after the envelope was thrown. However, even if a temporary detention or no detention at all had occurred, the car could be searched because there was probable cause to believe that the envelope contained a controlled substance.

## DISPOSITION

The judgment is affirmed.

Lucas, P. J., and Ashby, J., concurred.