Filed 4/22/13  In re Johnny C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re JOHNNY C., a Person Coming Under the Juvenile Court Law. | H038023<br>(Monterey County<br> Super. Ct. No. JV46135) |
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>     v.<br><br>JOHNNY C.,<br><br>   Defendant and Appellant. | |

In December 2011, a petition was filed alleging that Johnny C., a minor (17 years old at the time of the petition's filing), came within the provisions of Welfare and Institutions Code section 602.  The petition charged the minor with four counts, namely, carrying a concealed firearm in a vehicle, possession of a firearm, removal of identifying marks on a firearm, and operating a motor vehicle without a license.  The minor filed a motion to suppress evidence under Welfare and Institutions Code section 700.1, which was denied.  Pursuant to the People's motion, the court dismissed one count and amended another count.  After the minor admitted count 4—operation of a motor vehicle without a license—the court sustained the petition as to that count, dismissed the two remaining counts, declared the minor to be a ward of the court, and placed him on probation for 24 months under various terms and conditions.

The minor claims on appeal that the court erred in denying the suppression motion. He argues that the officer did not have sufficient objective facts to support a reasonable suspicion justifying the minor's detention. He also asserts a series of challenges to seven of the probation conditions imposed by the court, including claims that some conditions are vague and overly broad in violation of due process under the Fourteenth Amendment of the United States Constitution. We conclude that the court did not err in denying the suppression motion. We agree that some of the probation conditions should be modified. We will therefore order the conditions modified as indicated below and will affirm the dispositional order as so modified.

## FACTS[1]

Jessi Beteran is a campus monitor at Marina High School, whose regular duties consist of observing students coming into and leaving the campus; ensuring that students are attending classes; and reporting the arrival of anyone who does not appear to belong at the school. The high school is a closed campus, meaning that enrolled students do not leave for lunch or at any other time during school hours and that anyone arriving on campus must report to the office.

On December 22, 2011, at approximately 12:30 p.m., Beteran, located at the rarely-used second entrance to the campus, observed a gold sports utility vehicle (SUV) driving very slowly down the road; it was coming from an area consisting of abandoned housing.[2] The SUV had three juveniles in it, and she thought it was "suspicious" because of how slowly the vehicle was traveling and because she had never seen it before. Beteran contacted the campus liaison, Judy Luckerd, by radio to report the SUV because

---

[1] The facts are taken from the testimony provided at the hearing on the minor's motion to suppress.

[2] Because the area from which the SUV came was an area of abandoned housing, Beteran testified that "there's nobody that comes [from there] . . . during lunch time."

Luckerd was stationed near the main entrance of the school where the SUV was approaching.

During the time period relevant to this incident, Andres Rosas of the Marina Police Department was assigned as a school resources officer responsible for handling criminal matters occurring at any Marina school campuses, including Marina High School. Included among those responsibilities is truancy enforcement. At approximately 12:30 p.m. on December 22, 2011, Officer Rosas was standing with Luckerd at the gate to the student parking lot on the northwest side of the Marina High School campus. He overheard Beteran's radio call to Luckerd in which Beteran described a "suspicious" gold SUV travelling toward them. Officer Rosas then saw the SUV containing three juveniles travel by Luckerd and him, and he went to his patrol car. His intent was "to go follow the vehicle and find out if they were students of ours and what they were, basically, doing on campus." By the time Officer Rosas reached his patrol vehicle to follow the SUV, it was gone; he thought it was moving fast to elude him.

Officer Rosas continued driving toward a middle school/skate park/teen center complex; as he was driving westbound on Hillcrest Avenue, he spotted the SUV travelling eastbound toward him.[3] As the vehicle passed Officer Rosas, the passenger in the rear seat "duck[ed] down." He felt that the juvenile was attempting to conceal his identity from the officer; he thought the juvenile might be a truant. Officer Rosas explained that there was also "an officer safety concern [about] why[] an individual [would be] hiding in a vehicle." He then made a U-turn and pursued the SUV, making a traffic stop.

Approaching the driver's side of the SUV, Officer Rosas made contact with the minor, who was the driver. He asked the minor and the two passengers their ages. The

---

[3] Approximately three to four minutes elapsed from the time Officer Rosas saw the SUV drive by him while standing at the high school parking lot entrance to again seeing the vehicle off-campus driving on Hillcrest Avenue.

minor said "he was about to turn 18." The front passenger said he was 16, and the rear passenger said he was 17. Officer Rosas then asked the minor for his driver's license. The minor responded that he did not have one. The officer then asked for identification from all three juveniles and each gave verbal identifications. The minor gave the officer a September 1994 birth date. Officer Rosas then asked the minor to turn off the ignition and hand him the key. The officer ran a check through CLETS[4] and determined that the minor had a prior adjudication of driving while unlicensed. Officer Rosas prepared a citation, charging the minor with a violation of Vehicle Code section 12500. He told the minor to step out of the SUV, took him behind the vehicle, and explained that the SUV would be impounded for 30 days.

Before impounding the SUV, Officer Rosas and another officer conducted an inventory search in accordance with written protocol of the Marina Police Department. In the rear cargo area, they found a disassembled Harrington and Richardson 410-gauge shotgun, wrapped in a sweatshirt.

PROCEDURAL BACKGROUND

On December 27, 2011, the Monterey County District Attorney filed a petition under Welfare and Institutions Code section 602, subdivision (a), with the juvenile court below. In the petition, the People alleged that the minor had committed four offenses that if committed by an adult would be crimes, namely, unlawfully carrying a concealed firearm in a vehicle, a felony (Pen. Code § 12025, subd. (a)(1); count 1);[5] possession by a minor of a firearm capable of being concealed upon the person, a misdemeanor (§ 12101, subd. (a)(1); count 2); changing, altering, removing, or obliterating the maker's name, model, manufacturer's number or other mark or identification on a firearm, a

---

[4] "CLETS [California Law Enforcement Telecommunications System] is an automated system used to track a person's criminal history (rap sheet). [Citation.]" (*In re M.L.* (2012) 205 Cal.App.4th 210, 217, fn. 4.)

[5] All further statutory references are to the Penal Code unless otherwise stated.

misdemeanor (§ 12090; count 3); and unlicensed operation of a motor vehicle, a misdemeanor (Veh. Code, § 12500, subd. (a); count 4).

The minor thereafter filed a motion to suppress evidence pursuant to Welfare and Institutions Code section 700.1, arguing that property seized and statements obtained from the minor should be suppressed because they were products of an unlawful search and seizure. The motion was opposed orally by the People.[6] After the presentation of evidence and argument, the court denied the minor's suppression motion. In so ruling, the court found that "there was reasonable suspicion to believe that there was criminal activity afoot, being either the . . . inappropriate and illegal entry into the campus and or the . . . truancy[] issue, where people would leave school early without permission."

Following the denial of the suppression motion, the court, over the minor's objection, granted the People's motion to amend the petition to strike count 1 and to amend count 2 to charge the offense as a felony. After the commencement of a jurisdictional hearing but prior to its completion, the People moved to dismiss the allegations of counts 2 and 3, and the minor admitted the allegations of count 4. The court granted the People's motion to dismiss counts 2 and 3, adjudged the minor to be a ward of the court to remain in the custody of his guardian, and granted probation for a term of 24 months.

The minor filed a timely notice of appeal.

DISCUSSION

I.      *Motion to Suppress*

A.      *Standard of Review*

"An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial

---

[6] There is some indication in the record that the People submitted a list of cases in opposition to the suppression motion on the day of the hearing, but the clerk's transcript contains no written opposition to the motion.

court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated.  [Citations.]  'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.'  [Citations.]  [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard.  [Citations.]  Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review.  [Citations.]  Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review."  (*People v. Williams* (1988) 45 Cal.3d 1268, 1301; see also *People v. Ayala* (2000) 23 Cal.4th 225, 255.)

All presumptions favor the trial court's exercise of its power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences, " 'and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' " (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597, quoting *People v. Lawler* (1973) 9 Cal.3d 156, 160; see also *In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.)  And where there is no controversy concerning the underlying facts, our task is simplified:  The only issue is whether that rule of law, as applied to the undisputed historical facts, was or was not violated.  This is an issue for our independent review.  (See *People v. Thompson* (2006) 38 Cal.4th 811, 818.)

B.     *Parties' Contentions*

The minor contends that his detention by Officer Rosas—i.e., the traffic stop— cannot be justified as a truancy detention because he did not follow through with the particularized truancy detention and arrest requirements.  He argues that "truancy was a pretext because Officer Rosas did not conduct a truancy investigation."  That being the case, the minor argues, his detention must be analyzed under the more general standard of

determining whether the officer has sufficient objective facts that would create a reasonable suspicion in the officer's mind that the minor was engaging in, or had engaged in criminal activity that justified detaining him. The minor argues further that under this standard, the detention was unlawful because there were no facts supporting a reasonable suspicion of criminal activity on the part of the minor.

The Attorney General responds that Officer Rosas acted properly in detaining and arresting the minor for truancy. She contends further that the officer had a reasonable suspicion that the minor "and his companions had planned criminal activity and, having been thwarted, were attempting to flee."[7] Lastly, the Attorney General makes the alternative argument under *People v. Brendlin* (2008) 45 Cal.4th 262 that, even assuming the minor was unlawfully detained, "any connection between an antecedent illegality and the discovery of evidence was attenuated."

    C.    *Applicable Law*

    1.    *Detentions under the Fourth Amendment*

The legal basis upon which a peace officer may detain a citizen has been explained as follows: "[I]n order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893, superseded on other grounds by Cal. Const., art. I, § 28.)[8] "The corollary to this rule, of course, is that an investigative stop or detention

---

[7] In arguing that Officer Rosas had a reasonable suspicion to detain the minor based upon suspected truancy, or alternatively, suspected criminal activity, the Attorney General tracks the alternative grounds stated by the trial court in its denial of the suppression motion.

[8] "Since the passage of Proposition 8 in 1982 (Cal. Const., art. I, § 28), the subjective belief of the citizen set out in *In re Tony C.*[, *supra*,] 21 Cal.3d 888, no longer applies in analyzing whether an encounter is a detention. [Citation.] Rather the federal

predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]" (*In re Tony C.*, *supra*, at p. 893, citing *Terry v. Ohio* (1968) 392 U.S. 1, 22.)

In determining the lawfulness of a temporary detention, courts look at the " 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." (*United States v. Arvizu* (2002) 534 U.S. 266, 273, quoting *United States v. Cortez* (1981) 449 U.S. 411, 417; see also *People v. Souza* (1994) 9 Cal.4th 224, 239.) This standard of " 'reasonable suspicion' . . . [is one] less demanding than probable cause 'not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.' " (*People v. Souza,* at pp. 230-231, quoting *Alabama v. White* (1990) 496 U.S. 325, 330.) And as the United States Supreme Court has noted, "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.' [Citation.]" (*United States v. Sokolow* (1989) 490 U.S. 1, 7-8, quoting *Illinois v. Gates* (1983) 462 U.S. 213, 232.) A person is deemed to have " 'been "seized" within the meaning of the Fourth Amendment' [citation] . . . 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " (*Michigan v. Chesternut* (1988) 486 U.S. 567, 573, fn. omitted, quoting *United States v. Mendenhall* (1980) 446 U.S. 544, 554; see also *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790-791.)

---

standard of analyzing the objective facts of the incident controls. [Citation.]" (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 460, fn. 2, citing *In re Lance W.* (1985) 37 Cal.3d 873.)

## 2. *Truancy Arrests*

All children between the ages of six and 18 years old are, unless exempted, "subject to compulsory full-time education." (Educ. Code, § 48200; see *In re Humberto O.* (2000) 80 Cal.App.4th 237, 241.) Pursuant to Education Code section 48264, ". . . a peace officer . . . may arrest or assume temporary custody, during school hours, of any minor subject to compulsory full-time education or to compulsory continuation education found away from his or her home and who is absent from school without valid excuse within the county, city, or city and county, or school district." And one arresting a minor for truancy ". . . shall forthwith deliver the minor either to the parent, guardian, or other person having control, or charge of the minor, or to the school from which the minor is absent, . . ." (Educ. Code, § 48265.)

The California Supreme Court addressed the question of truancy arrests in the context of detentions under the Fourth Amendment generally in *In re James D.* (1987) 43 Cal.3d 903. There, the minor, who appeared to be 15 to 16 years old, was stopped by a police officer for suspected truancy at 10:30 a.m. while the minor was walking on a sidewalk carrying a book bag. (*Id.* at p. 908.) While being questioned, the youth "suddenly shoved his hand beneath his jacket," resulting in the officer performing a pat search for weapons which ultimately resulted in the discovery of LSD. (*Ibid.*) After his arrest for possession of a controlled substance, the minor moved to suppress the evidence as being the product of an unlawful detention. (*Ibid.*)

After reviewing California's truancy statutes and detentions under the Fourth Amendment (*In re James D.*, *supra*, 43 Cal.3d at pp. 909-914), the high court held that detentions based upon a reasonable suspicion of truancy were appropriate in light of the important state interest of enforcing the state's compulsory education statutes and the minimal intrusion created by such detentions. (*Id.* at p. 915.) Adapting the reasonable

suspicion standard generally applied for detentions under the Fourth Amendment,[9] the court held that "[a] detention to investigate whether a person is a truant is justified when there are specific and articulable facts causing an officer to suspect, reasonably, that a *truancy violation* is occurring, and that the person he intends to detain is a truant." (*In re James D.*, at p. 916, fn. omitted; see also *In re Humberto O.*, *supra*, 80 Cal.App.4th at p. 241.) In assessing whether the facts known to the officer are sufficient, the court concluded that "[y]outhful appearance . . . is a highly relevant and objectively verifiable *factor* in determining the propriety of a truancy detention." (*In re James D.*, at p. 917.) The high court cautioned that such detentions may not be used as a ruse for a generalized criminal investigation: "Questioning must, of course, be strictly limited to the purpose of the stop. [Citation. . . . T]he sole purpose of a truancy 'arrest' is to return the absent student to school as expeditiously as possible. Therefore, '[t]he "arrest" that takes place under [Education Code] section 48264 is a severely limited type of arrest and may not be used as a pretext for investigating criminal matters.' [Citations.] Likewise, the sole purpose of a truancy detention is to investigate whether a particular person is a truant, and if he is in fact a truant, to place him under a[n Education Code] section 48264 'arrest' in order to return him to school." (*Id.* at pp. 915-916.)

        D.    *Analysis of Claim of Error*

As we have noted, a court decides whether a temporary detention is lawful by evaluating "the totality of the circumstances." (*United States v. Cortez*, *supra*, 449 U.S. at p. 417; see also *In re James D.*, *supra*, 43 Cal.3d at p. 918 [validity of stop to question suspected truant depends on evaluation of whether "under the circumstances" reasonable

---

[9] "[I] in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity." (*In re Tony C.*, *supra*, 21 Cal.3d at p. 893.)

grounds existed for truancy detention].)  Here, the facts are not in dispute, and the court specifically found the two prosecution witnesses, Beteran and Officer Rosas, to be credible, a finding to which we give deference.  (See *People v. Leyba*, *supra*, 29 Cal.3d at pp. 596-597.)  The record here demonstrates that Officer Rosas was aware of the following circumstances prior to conducting a traffic stop of the SUV driven by the minor:  (1) a vehicle that a school employee thought "suspicious" was traveling slowly down a road near campus, coming from an area consisting of abandoned housing; (2) the SUV was observed by a campus monitor located at a seldom-used school entrance; (3) Marina High School was a closed campus in which students were not supposed to leave for lunch or at any other time during school hours; (4) the SUV contained three persons whom the officer believed to be juveniles; (5) Officer Rosas thought that the SUV was being driven fast to prevent him from following it; and (6) after spotting the SUV several minutes later on city streets away from the high school, the rear passenger "duck[ed] down" as the SUV passed the patrol car.  Under *In re James D.*, *supra*, 43 Cal.3d at page 916, these circumstances constituted "specific and articulable facts causing an officer to suspect, reasonably, that a *truancy violation* [was] occurring, and that the person he intend[ed] to detain [was] a truant."  (See *id.* at p. 917 [truancy detention may be justified given youthful appearance of person carrying book bag and his presence three miles from nearest school while school was in session]; *In re Humberto O*, *supra*, 80 Cal.App.4th at p. 242 [same].)

The minor argues that the *In re James D.* standard for assessing truancy detentions does not apply here because once Officer Rosas effected the traffic stop, he did not pursue whether the minor and his companions were in fact truants.  We disagree.

The first questions Officer Rosas directed to the three juveniles concerned their ages—a critical aspect of determining whether any or all of them might be truants.  He then asked the minor for his driver's license.  Given, as we have concluded above, that Officer Rosas had already lawfully stopped the SUV for purposes of investigating the

possible truancy of its driver and passengers, the officer was entitled to demand that the minor present his driver's license. (Veh. Code, § 12951, subd. (b) [motor vehicle driver required to present driver's license upon officer's demand]; see *People v. Saunders* (2006) 38 Cal.4th 1129, 1137 [after "pickup had lawfully been stopped, the police were entitled to demand the driver's license and registration"].) Moreover, while the minor discounts the relevance of a driver's license to a truancy investigation and argues that it demonstrates the officer's claim of a truancy detention was pretextual, a driver's license includes identifying matter such as the individual's name, age and mailing address, which would be highly relevant in verifying whether the minor was a truant. (See Veh. Code, § 12811, subd. (a)(1)(A).) And after the minor responded that he did not have a driver's license, Officer Rosas's next questions to the juveniles, asking them to identify themselves, were also reasonably related to determining whether they might be truants.

Moreover, the fact that the officer did not ask where the juveniles went to school or ask other questions directly pertinent to whether they were truants—contrary to the minor's contention—does not invalidate the truancy detention. The Supreme Court in *In re James D.* rejected a similar argument: "Our review of the record discloses the officers' conduct and questions were within the strictly limited purposes of the detention, i.e., to determine whether defendant was a truant. [Citation.] The officers first asked for defendant's identification; being told he had none, they asked his destination and from whence he had come. All of these questions reasonably were designed to determine whether defendant was a truant, and we would not conclude the questioning exceeded the permissible scope of the stop merely because we might be able to fashion more direct and piercing questions that may have gone to the root of the matter a bit sooner." (*In re James D.*, *supra*, 43 Cal.3d at p. 918, fn. 8.)

Lastly, we reject the minor's claim that the truancy detention was unlawful because "truancy was a pretext." This suggests that the traffic stop violated the Fourth Amendment because Officer Rosas was motivated not by a desire to investigate the

juveniles' possible truancy; rather, the officer wanted to use truancy as a ruse to conduct a criminal investigation. While we find little support for this position in the record, the claim has no merit, because the subjective motivations of Officer Rosas are not relevant to whether there were sufficient articulable facts forming the basis for a reasonable suspicion of truancy. (See *Whren v. United States* (1996) 517 U.S. 806, 813 ["constitutional reasonableness of traffic stops" is not dependent upon "the actual motivations of the individual officers involved"].) As we have noted, there were sufficient articulable facts here to support the truancy detention. And the questioning by Officer Rosas was, as we have observed, "strictly limited to the purpose of the [truancy] stop." (*In re James D.*, *supra*, 43 Cal.3d at p. 915.)

There was substantial evidence supporting the court's finding that Officer Rosas was justified in detaining the minor and his two companions to investigate their possible truancy. (*In re James D.*, *supra*, 43 Cal.3d at p. 916.) Upon learning soon after the traffic stop that the minor was driving the SUV without a valid license, the officer was legally justified in impounding the vehicle and performing an inventory search incident to that impound. (See Veh. Code, § 22651, subd. (p); *People v. Green* (1996) 46 Cal.App.4th 367, 373.) Therefore, the court did not err in denying the minor's motion to suppress.[10]

II.     *Probation Conditions*

The minor challenges seven probation conditions (numbers 10, 11, 12, 16, 17, 19, and 21) imposed by the court. Each challenged probation condition is discussed below.

---

[10] Because we have concluded that the court properly found that the truancy detention was legally justified, we need not consider whether its alternative ground for denying the suppression motion (i.e., the officer had a reasonable suspicion that the juveniles were involved in criminal activity) was also proper. (See *People v. Jenkins* (2000) 22 Cal.4th 900, 980, fn. 12 [where suppression motion was properly denied based on third-party consent, appellate court declined to consider other claimed justifications for such denial].)

A. *Applicable Law*

A juvenile court is empowered to impose upon a ward placed on probation "any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code, § 730, subd. (b).) "The juvenile court has wide discretion to select appropriate conditions and may impose ' "any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' " ' [Citations.]" (*In re Sheena K.* (2007) 40 Cal.4th 875, 889.) This discretion is in fact broader with respect to the imposition of probation conditions for juveniles than it is for adult offenders. (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1152; see also *In re Sheena K.*, at p. 889 [probation condition that may be unconstitutional for adult offender may be permissible for minor under juvenile court's supervision].)

Both adult offenders and juveniles may challenge a probation condition on the grounds that it is unconstitutionally vague or overly broad. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 887.) As we have explained: "Although the two objections are often mentioned in the same breath, they are conceptually quite distinct. A restriction is unconstitutionally vague if it is not ' "sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated." ' [Citation.] A restriction failing this test does not give adequate notice—"fair warning"—of the conduct proscribed. [Citations.] A restriction is unconstitutionally overbroad, on the other hand, if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' [Citations.] The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some

infringement." (*In re E.O.*, *supra*, 188 Cal.App.4th at p. 1153; see also *In re Victor L.* (2010) 182 Cal.App.4th 902, 910.)

Any objection to the reasonableness of a probation condition is forfeited if not raised at the time of imposition. (See *In re Justin S.* (2001) 93 Cal.App.4th 811, 814; see also *Sheena K.*, *supra*, 40 Cal.4th at p. 883, fn. 4; *People v. Welch* (1993) 5 Cal.4th 228, 237.) Constitutional challenges to probation conditions on their face, however, may be raised on appeal without objection in the court below. (*Sheena K.*, at pp. 887-889.)

B.      *School Attendance Condition (No. 10)*

The minor challenges the last sentence of Condition Number 10, concerning school attendance, which reads: "If you are not in school that day for any reason, including illness or suspension, you are not to leave your home unless it is for a doctor's appointment."[11] He argues that the condition "is vague, overbroad, arbitrary and capricious." (Initial capitalization omitted.) The minor contends further that the condition is unduly restrictive and infringes upon his right to travel. He also asserts that "[a] doctor's appointment is one of a number of legitimate reasons why a student might be physically absent from school and required to leave his home. Appellant could be required to get medicine from a pharmacy, complete community service or attend a funeral." The minor does not suggest an appropriate modification to the condition.

We agree with the Attorney General that the condition is not vague, arbitrary, or capricious as claimed by the minor. In general, a probation condition which requires a ward to attend school is valid and enforceable. (*In re Gerald B.* (1980) 105 Cal.App.3d

---

[11] The condition reads in its entirety: "You are to attend school regularly, every day and every class, on time. Obey all school rules and regulations and directives of school authorities. Submit school reports to your Probation Officer when requested. This includes summer school, if directed by the Court, your Probation Officer, or your parents/guardians. You are to notify your Probation Officer by 8:30 a.m. on any school day you are absent. If you are not in school that day for any reason, including illness or suspension, you are not to leave your home unless it is for a doctor's appointment."

119, 124-125.) Here there was no ambiguity with respect to the condition, and the minor points to nothing in the record to suggest that requiring school attendance is an "arbitrary" or "capricious" condition in this instance. We do agree with the minor, however, that the condition is overly broad in that it recognizes only one reason for not staying home on school days (attendance at a doctor's appointment). There may be special circumstances other than illness requiring attendance at a doctor's appointment, such as family emergencies or funerals, in which a student might be legitimately absent from school and not at home. Accordingly, we will order the last sentence of condition number 10 modified to read: "If you are not in school that day for any reason, including illness or suspension, you are not to leave your home unless it is for a doctor's appointment, or, with advance approval from your Probation Officer, for some other necessary and appropriate reason."

### C.    *Association/Gang Conditions (Nos. 11 and 12)*

Both condition number 11[12] and condition number 12[13] concern association with gangs and visiting any locations known to be frequented by gang members. The minor challenges the conditions, contending that the term "gang" "is overbroad because [it] is not defined." He also argues that language in condition number 11 requiring the approval of his associates by his "parents/guardians is overbroad, vague, arbitrary, and capricious"

---

[12] Condition number 11 reads: "Your associates are to be approved by your parents/guardians, and you shall not associate/communicate with Miguel [] and Alejandro [], or any individuals identified by your Probation Officer as a threat to your successful completion of Probation. You are not to associate with anyone known to you to be a member of any gang as directed by your Probation Officer. You are not to associate with any individuals known by you to be on Probation or Parole (adult or juvenile)."

[13] Condition number 12 reads: "You shall not visit or remain in any SPECIFIC locations known by you to be identified as gang gathering areas, areas where gang members or associates are congregating or areas specified by your Probation Officer as involving gang[-]related activity, nor shall you participate in any gang activity."

because there is no requirement that he be advised in advance of the persons he should avoid, and the term "associates" contains no definition.

The Attorney General responds that, insofar as the minor argues that the term "gang" is not defined, the problem may be easily cured by referencing the statutorily defined term, "criminal street gang" in section 186.22, subdivisions (e) and (f). We concur that any defect with respect to this aspect of these two conditions may be remedied in this fashion. Following a 1998 decision of the Fifth District Court of Appeal (*People v. Lopez* (1998) 66 Cal.App.4th 615, 632-634, 638) and subsequent cases congruent with *Lopez* (see, e.g., *In re H. C.* (2009) 175 Cal.App.4th 1067, 1072; *In re Vincent G.* (2008) 162 Cal.App.4th 238, 247), we will order the probation conditions modified to define the term "gang" as a "criminal street gang" pursuant to section 186.22, subdivision (f).

Additionally, the Attorney General does not object to the inclusion of language in condition number 11 that the minor have advance knowledge of the approval or disapproval by his parents or guardians of any proposed associates. We believe such a modification is appropriate. (See, e.g., *In re H. C.*, *supra*, 175 Cal.App.4th at p. 1072 [modifying probation condition to prohibit minor's association with probationer, parolees, or gang members to require minor's knowledge of that status]; *People v. Lopez*, *supra*, 66 Cal.App.4th at pp. 627-629 [modifying probation condition prohibiting association with gang members to include probationer's knowledge that person is gang member]; *People v. Garcia* (1993) 19 Cal.App.4th 97, 102 [modifying probation condition prohibiting association with felons, ex-felons, and users and sellers of narcotics to require probationer's knowledge of that status].)[14]

---

[14] The Attorney General also purportedly responds to an argument concerning language in condition number 11 that the minor not associate or communicate with "any individuals identified by your Probation Officer as a threat to your successful completion

The minor cites *People v. O'Neil* (2008) 165 Cal.App.4th 1351 (*O'Neil*) in support of his challenge to the portion of condition number 11 indicating that his "associates are to be approved by your parents/guardians . . ." There, the trial court imposed the following condition: " 'You shall not associate socially, nor be present at any time, at any place, public or private, with any person, as designated by your probation officer.' " (*Id.* at p. 1354.) The reviewing court observed that, "[a]s written, there are no limits on those persons whom the probation officer may prohibit defendant from associating with." (*Id.* at p. 1357.) It noted that the condition failed to "identify the class of persons with whom defendant may not associate" or "provide any guideline as to those with whom the probation department may forbid association." (*Id.* at pp. 1357-1358.) The *O'Neil* court explained that while a trial court "may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation," "the court's order cannot be entirely open-ended." (*Id.* at pp. 1358-1359.) It concluded that "[w]ithout a meaningful standard, the order is too broad and it is not saved by permitting the probation department to provide the necessary specificity." (*Id.* at p. 1358, fn. omitted.) As a caveat, the court noted that it was dealing with conditions of adult probation and "[c]onditions of juvenile probation may confer broader authority on the juvenile probation officer than is true in the case of adults [citations]." (*Id.* at p. 1358, fn. 4.)

*O'Neil* is not dispositive. It concerned a probation condition giving a probation officer, not a parent or guardian, broad discretion in determining the persons with whom the probationer could associate. And it involved an adult offender, not a juvenile, a distinction specifically noted by the *O'Neil* court. (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1358, fn. 4.)

---

of Probation." As we read the minor's opening brief, he does not challenge this portion of condition number 11.

In *In re Frank V.* (1991) 233 Cal.App.3d 1232 (*Frank V.*), the minor "challenge[d] as overbroad the condition limiting his right of association to those approved by his probation officer or parents." (*Id.* at p. 1243.) The juvenile court told the ward that, if his mother, father, or probation officer instructed him to not associate with certain persons, he could not "hang around" or "hang out" with them. (*Id.* at p. 1241.) The appellate court, recognizing that a juvenile court acts in *parens patriae*, upheld the probation condition: "The juvenile court could not reasonably be expected to define with precision all classes of persons which might influence [the minor] to commit further bad acts. It may instead rely on the discretion of his parents, and the probation department acting as parent, to promote and nurture his rehabilitation." (*Id.* at p. 1243.)

Similarly, the court in *In re Byron B.* (2004) 119 Cal.App.4th 1013 (*Byron B.*), rejected the minor's challenge to a probation condition prohibiting contact with any person disapproved by a parent or probation officer. It held that the condition was not overly broad (*id.* at p. 1017), and concluded that "[t]he juvenile court, acting in *parens patriae*, could limit appellant's right of association in ways that it arguably could not limit an adult's." (*Id.* at p. 1018.) In rejecting the claim that the probation condition was overly broad, the court in *Byron B.* distinguished another case, *In re Kacy S.* (1998) 68 Cal.App.4th 704 (*Kacy S.*), relied on by the minor here. (*Byron B.*, at pp. 1017-1018.) In *Kacy S.*, a probation condition required a minor to " 'not associate with any persons not approved by his probation officer.' " (*Kacy S.*, at p. 712.) The reviewing court in *Kacy S.*, finding the condition to be overly broad, held that the condition "literally requires the probation officer to approve [the minor's] 'associat[ion]' with 'persons' such as grocery clerks, mailmen and health care providers." (*Id.* at p. 713.) The *Byron B.* court distinguished *Kacy S.*, reasoning that the problematic language "not approved" there was not present in the probation conditions challenged in the case before it or in *Frank V., supra*, 233 Cal.App.3d 1232. (*Byron B.*, at p. 1017.)

Although the "not approved" language in *Kacy S.* is not found in the probation condition before us, we nonetheless conclude that the parental approval language in condition number 11 is overly broad. In stating that the minor's "associates are to be approved by [his] parents or guardians," the condition is similar to the overly broad condition in *Kacy S.*, *supra*, 68 Cal.App.4th 704. It could be reasonably construed as prohibiting any association by the minor (both casual day-to-day contact, as well as acquaintanceship and friendship) with all persons not approved by his parents or guardians. It is a sweeping provision which would be likely to include many unintended persons posing no harm to the minor's reformation and rehabilitation. We will therefore order this portion of condition number 11 modified to prohibit the minor from knowingly associating with any person of whom he knows his parents disapprove; this condition, as revised, will accomplish the salutary objective of preventing harmful associations but avoid unnecessary governmental interference with associational rights.[15]

In summary, we agree with some of the challenges asserted by the minor to condition numbers 11 and 12. We will accordingly order that condition number 11 be modified to read as follows: "You shall not associate with any person when that person is known to you to be someone of whom your parents/guardians disapprove, and you shall not associate/communicate with Miguel [] and Alejandro [], or any individuals identified by your Probation Officer as a threat to your successful completion of Probation. You are not to associate with anyone known to you to be a member of any gang as directed by your Probation Officer. You are not to associate with any individuals

---

[15] In so holding, we do not intend to in any way limit parental oversight of the minor's associates. "[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." (*Troxel v. Granville* (2000) 530 U.S. 57, 66; see *id.* at p. 78, (conc. opn. of Souter, J.) ["The strength of a parent's interest in controlling a child's associates is as obvious as the influence of personal associations on the development of the child's social and moral character"].)

known by you to be on Probation or Parole (adult or juvenile).  As used here, 'gang' means a criminal street gang as defined in Penal Code section 186.22, subdivision (f)." We will modify condition number 12 to insert the following sentence at the end of the condition:  "As used here, 'gang' means a criminal street gang as defined in Penal Code section 186.22, subdivision (f)."

> D.  *Substance Abuse Condition (No. 16)*

Condition number 16 concerns the use and possession of alcohol, narcotics, other controlled substances, and narcotics paraphernalia.[16]  The minor challenges a portion of the condition reading as follows:  "Do not inhale or attempt to inhale or consume any substance of any type or nature, used as paint, glue, plant material, or any aerosol product."  He argues that the provision is "vague and overbroad."  He asserts that "[i]t is virtually impossible to use the substances listed without inhaling them.  Appellant could be found in violation for using any aerosol, which is easily inhaled with use.  Also, these substances could be inhaled by being in the same room where they are being used."  The minor also argues that because of its breadth, the condition improperly restricts his right to travel.

The Attorney General responds that the minor's position lacks merit.  She argues that the minor's reading of the challenged portion of condition number 16 is incorrect, and that because of the phrase "attempt to inhale," the sentence prohibits only intentional inhalation of the enumerated substances.

---

[16] Condition number 16 reads:  "You are not to consume or possess any intoxicants, alcohol, narcotics, other controlled substances, related paraphernalia, poisons, or illegal drugs, including marijuana.  You are not to be with anyone known to you who is using or possessing illegal intoxicants, narcotics or drugs.  Do not inhale or attempt to inhale or consume any substance of any type or nature, used as paint, glue, plant material, or any aerosol product.  You are not to inject anything into your body unless directed to do so by a medical doctor.  You are not to consume any over the counter medication without prior approval of your parent or guardian; you are only to use the prescribed dosage as indicated on the package."

It seems clear from the context of the entirety of condition number 16 that the challenged sentence is directed simply toward the intentional inhalation of certain products for the express purpose of causing intoxication. In this respect, the minor's challenge seems to be a forced reading of the sentence prohibiting inhalation or attempted inhalation of the enumerated products. We believe that any deficiency can be readily cured by modifying the sentence to read: "Do not intentionally inhale or attempt to inhale or consume any substance of any type or nature, used as paint, glue, plant material, or any aerosol product for the purpose of becoming intoxicated."

### E. *Prescription Medicine Condition (No. 17)*

The minor objects to condition 17 concerning the use of prescription medications.[17] Specifically, he objects to the following language: "You must notify any treating physician of your substance abuse problems before accepting any medication." He contends that there is no evidence in the record indicating the he has a substance abuse problem and therefore the condition should be stricken or modified.

We agree with the Attorney General that this claim is not cognizable on appeal. The minor's claim raises no constitutional issue and he failed to assert it below. It is therefore forfeited. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 883, fn. 4; *In re Justin S.*, *supra*, 93 Cal.App.4th at p. 814.)

### F. *Weapons Condition (No. 19)*

Condition number 19 reads: "You shall not possess any weapons or any type of ammunition." The minor asserts that this condition is vague because the term "weapons"

---

[17] Condition number 17 reads: "You are not to possess or consume any prescription medications unless directed to do so by a medical doctor. You must notify any treating physician of your substance abuse problems before accepting any medication. You must notify your Probation Officer within 24 hours of receiving any prescription medications and identify all medications."

is not defined. He argues: "Virtually anything can be used as a weapon, among other things, a [broken] bottle . . . a rope . . . [or] a candlestick can be used as a weapon."

The Attorney General seemingly concedes that the term "weapons" should be defined in some way and does not object to some modification of the probation condition. She takes no position, however, on whether the modification should include a specification of particular forbidden weapons or a requirement that the minor intend to use the object as a weapon.

We agree that the term "weapons" requires some clarification. We will therefore order the probation condition modified to read as follows: "You shall not possess any firearms, knives, or other dangerous or deadly weapons, or any type of ammunition." (See *In re R.P.* (2009) 176 Cal.App.4th 562, 568 [rejecting challenge to probation condition prohibiting possession of dangerous or deadly weapons].)

### G. *Curfew Condition (No. 21)*

Lastly, the minor challenges certain aspects of probation condition number 21 concerning curfew. The condition reads: "You are not to be out of your home between 8:00 p.m. and 6:00 a.m. without approval of your Probation Officer." The minor argues that the condition is invalid because under Welfare and Institutions Code section 729.2, subdivision (c), curfew does not begin until 10:00 p.m.[18] In addition to modifying the time of the commencement of curfew from 8:00 p.m. to 10:00 p.m., the minor argues that, consistently with the same statute, the condition should be modified to include an exception in the event the minor is accompanied by a parent or legal guardian.

---

[18] "If a minor is found to be a person described in [Welf. & Inst. Code] Section 601 or 602 and the court does not remove the minor from the physical custody of the parent or guardian, the court as a condition of probation, except in any case in which the court makes a finding and states on the record its reasons that that condition would be inappropriate, shall: [¶] . . . [¶] (c) Require the minor to be at his or her legal residence between the hours of 10:00 p.m. and 6:00 a.m. unless the minor is accompanied by his or her parent or parents, legal guardian or other adult person having the legal care or custody of the minor." (Welf. & Inst. Code, § 729.2.)

We agree with the Attorney General that this claim is not cognizable on appeal. The challenge raised by the minor is not of constitutional dimension, and is therefore forfeited. (See *Sheena K.*, *supra*, 40 Cal.4th at p. 883, fn. 4; *In re Justin S.*, *supra*, 93 Cal.App.4th at p. 814.)[19]

DISPOSITION

The dispositional order is modified as follows: (1) As to probation condition number 10, strike the last sentence and replace it with the following: "If you are not in school that day for any reason, including illness or suspension, you are not to leave your home unless it is for a doctor's appointment, or, with advance approval from your Probation Officer, for some other necessary and appropriate reason." (2) As to probation condition number 11, strike it in its entirety and replace it with the following: "You shall not associate with any person when that person is known to you to be someone of whom your parents/guardians disapprove, and you shall not associate/communicate with Miguel [] and Alejandro [], or any individuals identified by your Probation Officer as a threat to your successful completion of Probation. You are not to associate with anyone known to you to be a member of any gang as directed by your Probation Officer. You are not to associate with any individuals known by you to be on Probation or Parole (adult or juvenile). As used here, 'gang' means a criminal street gang as defined in Penal Code section 186.22, subdivision (f)." (3) As to probation condition number 12, insert the following sentence at the end of the condition: "As used here, 'gang' means a criminal street gang as defined in Penal Code section 186.22, subdivision (f)." (4) As to condition number 16, strike the third sentence, and replace it with the following: "Do not

---

[19] In any event, a court may exercise its discretion to impose a probation condition imposing a curfew on a juvenile which is more restrictive than the curfew specified under Welfare and Institutions Code section 729.2, subdivision (c). (See *In re Jason J.* (1991) 233 Cal.App.3d 710, 719, disapproved on another ground in *People v. Welch* (1993) 5 Cal.4th 228, 237 [upholding curfew condition between " 'dark' " and 6:00 a.m.].)

intentionally inhale or attempt to inhale or consume any substance of any type or nature, used as paint, glue, plant material, or any aerosol product for the purpose of becoming intoxicated." (5) As to condition number 19, strike it in its entirety, and replace it with the following: "You shall not possess any firearms, knives, or other dangerous or deadly weapons, or any type of ammunition."

As so modified, the dispositional order is affirmed.

_____
Márquez, J.

WE CONCUR:

_____
Premo, Acting P.J.

_____
Mihara, J.