Filed 4/25/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C077040 |
| v. | (Super. Ct. No. 13F3135) |
| CHARLES JACOB STEELE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Shasta County, James Ruggiero and Wilson Curle, Judges. (Retired judges of the Shasta Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

C. Athena Roussos, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Stephen G. Herndon, Supervising Deputy Attorney General, and Harry Joseph Colombo, Deputy Attorney General, for Plaintiff and Respondent.

1

Defendant Charles Jacob Steele pleaded no contest to possession of methamphetamine and admitted a prior strike allegation after the trial court denied his motion to suppress evidence. The trial court sentenced defendant to six years in prison, consistent with his plea agreement. Defendant now contends the trial court erred in denying his motion to suppress evidence.

The California Supreme Court recently held that a deputy sheriff detained a defendant when the deputy sheriff pulled his patrol car behind the defendant's parked car and activated the emergency lights. (*People v. Brown* (2015) 61 Cal.4th 968, 972, 980 (*Brown*).) The court determined that a reasonable person under the circumstances would not have felt free to leave and the defendant submitted to the show of authority by remaining in his parked car. (*Ibid.*)

In the present case, sheriff's deputies pulled their patrol car behind two vehicles parking at night on a driveway out of sight from a nearby highway. The two vehicles included a lead vehicle and a second vehicle driven by defendant. The deputies activated their emergency lights to investigate a felony arrest warrant for the registered owner of the lead vehicle. Defendant argues the sheriff's deputies detained him without reasonable suspicion, requiring suppression of the evidence regarding the controlled substances discovered in his vehicle.

We conclude the trial court did not err in denying defendant's suppression motion. The sheriff's deputies detained defendant, but officer safety justified the detention to assure that defendant did not present a danger to the sheriff's deputies while they approached and investigated the lead vehicle. We will affirm the judgment.

BACKGROUND

Defendant moved to suppress evidence that he says sheriff's deputies obtained during an unlawful detention. Shasta County Sheriff's Deputy Jerry Fernandez testified at the suppression hearing. We draw our facts from the deputy's testimony.

2

Deputy Fernandez was on patrol in a marked patrol car with trainee Deputy Megan Bliss just after 10:00 p.m. The deputies were in full uniform and Deputy Bliss was driving.

Deputy Fernandez observed two vehicles that appeared to be traveling together. The lead vehicle was a dark colored sports utility vehicle and the second vehicle was a white Jeep. There was no other vehicle traffic.

The deputies followed the two vehicles onto Casual Lane, a rural dead end road with no streetlights. A records check on the license plates for the two vehicles yielded information that the lead vehicle had an expired registration and the second vehicle was a rental car. Deputy Fernandez decided not to stop the lead vehicle because of the risk associated with stopping people at night in their own driveways without ambient light. Deputy Bliss began to make a U-turn while the two vehicles drove down a driveway off Casual Lane.

As Deputy Bliss began to make the U-turn, dispatch informed the deputies that there was a felony arrest warrant for the registered owner of the lead vehicle. Deputy Fernandez decided to conduct an enforcement stop on the lead vehicle based on the expired registration and the arrest warrant. The deputies were not aware of any Vehicle Code violations associated with the second vehicle.

As the two vehicles were coming to a stop at the end of the driveway, the patrol car entered the driveway and Deputy Bliss activated the emergency lights. Deputy Bliss stopped the patrol car behind and a little to the right of the second vehicle. The lead vehicle was directly in front of the second vehicle.

The driveway "kind of comes in between shrubbery" and was not visible from the highway. The yard where the vehicles had stopped was wide open. But there were numerous vehicles and shrubbery in the yard. There was a trailer that appeared to be occupied located to the north.

3

The deputies approached the second vehicle first. Deputy Fernandez testified he contacted the second vehicle first for officer safety reasons and to inform the driver of that vehicle that the deputies were stopping the lead vehicle. Deputy Fernandez said, "As law enforcement officers, we are not going to walk past a vehicle in the middle of the night with a subject in it."

Defendant was in the driver's seat of the second vehicle and Deputy Bliss made contact with him. A second or two later, Deputy Fernandez approached the passenger's side of defendant's vehicle and smelled marijuana emanating from the vehicle.

Deputy Fernandez asked defendant whether there was marijuana in his vehicle. Defendant answered in the negative, but then said there was marijuana in the car earlier in the evening. Using his flashlight to illuminate the interior of the vehicle, Deputy Fernandez saw a green, leafy substance consistent with marijuana on the backseat. The deputies asked defendant to exit the vehicle. They located a bag of marijuana, two baggies of methamphetamine and other items during a search of the vehicle.

The trial court denied defendant's motion to suppress evidence. It found the initial police contact was a consensual encounter and not a stop. The trial court said the vehicles were already stopping when Deputy Bliss activated the emergency lights. But assuming the deputies stopped the vehicles, the trial court ruled there was probable cause to stop the lead vehicle because of the expired registration and there was no way for the deputies to stop the lead vehicle without also stopping the second vehicle. The trial court concluded that, under the circumstances, officer safety justified contact with defendant and the deputies had probable cause to search the second vehicle once they smelled the odor of marijuana upon contacting defendant.

After the trial court denied the suppression motion, defendant pleaded no contest to possession of methamphetamine for sale (Health & Saf. Code, § 11378 -- count 1) and

admitted a strike allegation (Pen. Code, § 1170.12)[1] based on a prior first degree burglary conviction (§ 459).  The remaining counts and another enhancement allegation were dismissed.  The trial court sentenced defendant to six years in state prison.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a suppression motion, we defer to its factual findings if supported by substantial evidence.  (*Brown, supra*, 61 Cal.4th at p. 975.)  We independently assess the legal question whether the challenged search or seizure was reasonable under the Fourth Amendment.  (*Ibid.*)  The reasonableness of the search or seizure is measured by federal constitutional standards.  (Cal. Const., art. I, § 28, subd. (f)(2); *People v. Schmitz* (2012) 55 Cal.4th 909, 916.)

DISCUSSION

Defendant argues (A) the initial contact between him and the deputies was a detention, not a consensual encounter; and (B) the deputies did not have reasonable suspicion or other legal justification to detain him.

A

The California Supreme Court has identified three categories of police encounters for purposes of Fourth Amendment analysis:  (1) consensual encounters that result in no restraint of liberty whatsoever; (2) detentions, which constitute seizures under the Fourth Amendment and are strictly limited in duration, scope, and purpose; and (3) formal arrests or comparable restraints on an individual's liberty, which require probable cause to arrest the individual for a crime.  (*In re Manuel G.* (1997) 16 Cal.4th 805, 821; *In re James D*. (1987) 43 Cal.3d 903, 911-912.)  In *Brown, supra*, 61 Cal.4th 968, the California Supreme Court recently addressed the difference between a consensual

---

[1] Undesignated statutory references are to the Penal Code.

encounter and a detention when a law enforcement officer approaches a motorist in a parked car.[2]

Brown involved a deputy sheriff who responded to a 911 call about a fight and a possible loaded gun. (*Brown, supra*, 61 Cal.4th at pp. 972-973.) The deputy encountered the defendant leaving the area of the reported fight, and the deputy followed the defendant's car when the defendant failed to respond to the deputy's initial attempt at contact. (*Ibid.*) The deputy found the defendant's car parked a short distance away, pulled behind the car, activated the overhead emergency lights on his patrol car, and approached the defendant as he sat in the driver's seat. (*Id.* at p. 973.) The deputy observed that the defendant had watery, bloodshot eyes, was mumbling, and appeared upset and flustered. (*Ibid.*) There was an odor of alcohol coming from the defendant's car. (*Ibid.*) The defendant admitted he had been drinking and was involved in the reported fight. (*Ibid.*)

The defendant was charged with felony driving under the influence. (*Brown, supra*, 61 Cal.4th at p. 974.) He moved to suppress evidence of his physical condition, statements, and breath test results as the fruits of an unlawful detention. (*Ibid.*) The trial court denied the motion, concluding that the defendant had not been detained until the deputy saw signs of intoxication; and at that point, the deputy had a reasonable suspicion to detain the defendant for driving under the influence. (*Ibid.*)

With regard to whether a detention had occurred, the California Supreme Court said that a reasonable person in the defendant's position -- where a deputy drove after the defendant's car, parked his patrol car behind the defendant's car, and activated his emergency lights -- would have perceived the deputy's actions as a show of authority,

---

[2] We granted defendant's request to file a supplemental brief to discuss *Brown, supra,* 61 Cal.4th 968, which was decided after this case was fully briefed. We have considered the parties' supplemental briefs.

conveying the message that the defendant was not free to leave. (*Brown, supra*, 61 Cal.4th at pp. 975-980.) And the defendant submitted to the show of authority by remaining in his car at the scene. (*Id.* at p 977.) The Supreme Court concluded that the defendant was detained when the deputy stopped behind his parked car and turned on the emergency lights. (*Id.* at p. 980.)

The key facts here are similar to those in *Brown.* Deputy Fernandez and Deputy Bliss followed the two vehicles and stopped behind defendant's vehicle, with the emergency lights activated. Under those circumstances, a reasonable person would have believed that he was not free to leave. (*Brown, supra*, 61 Cal.4th at pp. 975-980.) Like the defendant in *Brown,* defendant submitted to the show of authority by remaining in his vehicle. (*Id.* at p. 977.) We conclude defendant was detained for purposes of our Fourth Amendment analysis. (*Id.* at p. 980.)

B

Defendant also claims the deputies did not have reasonable suspicion to detain him.

" '[T]he touchstone of our analysis under the Fourth Amendment is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security," ' [citation], and that reasonableness 'depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers," ' [citation]." (*Maryland v. Wilson* (1997) 519 U.S. 408, 411 [137 L.Ed.2d 41, 46].) Officer safety is a weighty public interest. (*Id.* at p. 413 [137 L.Ed.2d at p. 47].)

Accordingly, law enforcement officers may lawfully detain a defendant when detention is necessary to determine the defendant's connection with the subject of a search warrant and related to the need of ensuring officer safety. (*People v. Glaser* (1995) 11 Cal.4th 354, 365 (*Glaser*).) In *Glaser*, law enforcement officers encountered the defendant at a property where the officers were about to execute a search warrant for

7

illegal drugs. (*Id.* at p. 360.) The defendant arrived at the property seconds before the officers; he was about to open a gate at the property when the officers arrived. (*Ibid.*) The officers did not know the defendant's connection to the premises. (*Id.* at p. 369.) They ordered the defendant to get on the ground, handcuffed him, and led him into the house. (*Id.* at p. 361.)

The issue before the California Supreme Court was whether the initial period of detention was constitutionally permissible. (*Glaser, supra*, 11 Cal.4th at p. 361.) The Supreme Court balanced the intrusiveness of the detention against the government interests justifying it. (*Id.* at pp. 365-367.) The court began by determining that several circumstances diminished the intrusiveness of the initial detention. (*Ibid.*) The initial detention was brief, it occurred in a private place, and it was apparently witnessed by only two persons. (*Id.* at pp. 366-367.) Moreover, there was no evidence of an independent investigatory purpose to detain the defendant, making it unlikely that the officers would exploit or prolong the detention. (*Id.* at p. 367.) The court further determined there were two governmental interests justifying the initial detention: officer safety, and the police interest in determining the defendant's connection with the premises being searched. (*Id.* at pp. 367-368.)

The Supreme Court concluded in *Glaser* that detaining the defendant was not only reasonable, but virtually unavoidable. (*Glaser, supra*, 11 Cal.4th at p. 369.) The court noted that it was dark and the defendant was standing in an unlit spot in the driveway. (*Ibid.*) The officers did not recognize the defendant, who was about to pass through a gate into the backyard of the house being searched. (*Ibid.*) The defendant appeared to be familiar with the premises, but the officers did not know the defendant's exact connection to the property. (*Ibid.*) Thus, the officers did not know whether the defendant would wish to be present to observe the search, whether he was likely to flee if contraband was discovered, or whether his presence would assist in the orderly execution of the search. (*Ibid.*) If he was not stopped, the defendant could come up behind the officers searching

the property.  (*Ibid.*)  Under those circumstances, the Supreme Court said a brief detention was justified for identification and to maintain officer safety.  (*Id.* at pp. 371, 374.)

The United States Supreme Court has recognized that officer safety during a traffic stop is a weighty government interest which can justify detaining the passengers of a stopped vehicle.  (*Maryland v. Wilson, supra*, 519 U.S. at p. 413 [137 L.Ed.2d at p. 47].)  The question in *Maryland v. Wilson* was whether a police officer could order the passengers of a lawfully stopped car to exit the vehicle.  (*Id.* at p. 410 [137 L.Ed.2d at p. 45].)  The Supreme Court said although there was no reason to stop or detain the passengers, as a practical matter the passengers had already been stopped by virtue of the stop of the vehicle.  (*Id.* at pp. 413-414 [137 L.Ed.2d at p. 47].)  Requiring the passengers to exit the car imposed only a minimal additional intrusion on the passengers while helping to maintain officer safety during the traffic stop.  (*Id.* at pp. 414-415 [137 L.Ed.2d at pp. 47-48].)  The Supreme Court held an officer may, consistent with the Fourth Amendment, order the passengers to exit a vehicle pending completion of a traffic stop.  (*Id.* at p. 415 [137 L.Ed.2d at p. 48].)

The Supreme Court in *Maryland v. Wilson* said the facts before it were analogous to those in *Michigan v. Summers* (1981) 452 U.S. 692 [69 L.Ed.2d 340].  In that case, police officers executed a search warrant at a house thought to contain contraband, and detained the defendant during the search because the defendant was seen leaving the premises when the officers arrived. (*Maryland v. Wilson, supra*, 519 U.S. at p. 414 [137 L.Ed.2d at p. 48].)  The court in *Michigan v. Summers* concluded the officers lawfully detained the defendant because " '[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.' "  (*Maryland v. Wilson, supra*, 519 U.S. at p. 414 [137 L.Ed.2d at p. 48].)

The Colorado Supreme Court in *People v. Taylor* (Colo. 2002) 41 P.3d 681 (*Taylor*) balanced the interests of the government and the defendant and did not require

9

the government to demonstrate reasonable suspicion to stop the defendant. (*Taylor, supra*, 41 P.3d at p. 687.) In *Taylor*, an officer stopped the vehicle the defendant was driving in order to arrest the defendant's passenger, for whom there were arrest warrants. (*Id.* at p. 683) The defendant did not commit a traffic violation, did not exhibit aberrant behavior, and the officer did not suspect that the defendant was engaged in criminal wrongdoing. (*Id.* at p. 687.) The court in *Taylor* said that although the officer had seized the defendant within the meaning of the Fourth Amendment, the seizure was not an arrest or an investigatory stop. (*Taylor, supra*, 41 P.3d at p. 687.) According to the court, the circumstances presented "one of those rare situations . . . 'in which the balance of interests precludes insistence upon some quantum of individualized suspicion' that Defendant is engaged in criminal activity to justify a seizure." (*Id.* at p. 688 [citing *Delaware v. Prouse* (1979) 440 U.S. 648, 654-655 [59 L.Ed.2d 660, 667]; *United States v. Martinez–Fuerte* (1976) 428 U.S. 543, 560-561 [49 L.Ed.2d 1116, 1130]].) Instead, an "objective and equally satisfactory safeguard [for the defendant's personal security interest] existed to protect Defendant from the unfettered discretion of officers in the field: Officer Soper had probable cause to arrest [passenger] Ms. Tafoya, and stopping Defendant's vehicle was necessary to effect her arrest." (*Taylor, supra,* 41 P.3d at p. 688 [citing *Delaware v. Prouse, supra*, 440 U.S. at pp. 654-655 [59 L.Ed.2d 660, 667] in which the United States Supreme Court recognized that in some cases the balance of interests precludes insistence upon " 'some quantum of individualized suspicion' "].)

Weighing the compelling public interest in securing the arrest of wanted criminals against the defendant's right to personal security free from arbitrary interference by law enforcement officers, the *Taylor* court concluded that the seizure of the defendant was reasonable. (*Taylor, supra*, 41 P.3d at p. 688.) The court said the need to arrest the passenger justified the relatively minimal intrusion upon the defendant's security and privacy interests. (*Ibid.*) And the scope of the intrusion was reasonably related to the circumstances which justified the interference in the first place. (*Ibid.*)

10

Here, as in *Glaser, supra*, 11 Cal.4th 354, *Maryland v. Wilson, supra*, 519 U.S. 408, and *Taylor, supra,* 41 P.3d 681, the initial approach of the deputies to defendant's vehicle was not for the purpose of arresting defendant or for an investigation directed at him.  The deputies stopped the lead vehicle for an expired registration and a felony arrest warrant.  (*People v. Saunders* (2006) 38 Cal.4th 1129, 1135 [officer may stop a vehicle and detain a driver when there is articulable and reasonable suspicion that an automobile is not registered].)  They did not have any information that defendant's vehicle violated the Vehicle Code.  However, while attempting to complete a lawful detention of the lead vehicle, the deputies were forced to either contact defendant because his vehicle was parked directly behind the lead vehicle or walk past defendant's vehicle without knowing whether the occupants of that vehicle might pose a danger to the deputies.

The circumstances warranted caution by the deputies.  It was dark.  The deputies were at the end of a driveway, not visible from the highway.  The lead and second vehicles appeared to be travelling together and the deputies did not know the identities of the drivers.  There was a risk defendant could come up behind the deputies while they contacted the lead vehicle.  As the United States Supreme Court has recognized, "traffic stops are 'especially fraught with danger to police officers.'  [Citation.]  ' "The risk of harm to both the police and the occupants [of a stopped vehicle] is minimized," ' . . . ' "if the officers routinely exercise unquestioned command of the situation." ' " (*Arizona v. Johnson* (2009) 555 U.S. 323, 330-331 [172 L.Ed.2d 694, 702] [also stating an officer is not constitutionally required to give the passenger of a stopped vehicle an opportunity to depart the scene after exiting a vehicle without first ensuring that, in so doing, she was not permitting a dangerous person to get behind her]; see *Brendlin v. California* (2007) 551 U.S. 249, 258 [168 L.Ed.2d 132, 140] [it is reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize the officer's safety].)  Officer safety is a weighty public interest warranting a brief detention of defendant to assure that defendant did not

11

present a danger to the deputies while they approached and investigated the lead vehicle and its occupants.

Additionally, the initial police encounter with defendant was a minimal intrusion upon defendant's privacy and security interests. Defendant was already parking his vehicle. It does not appear that the initial detention of defendant was prolonged. Deputy Fernandez testified that Deputy Bliss activated the emergency lights, the deputies exited the vehicle, Deputy Bliss made the initial contact with defendant, Deputy Fernandez was one or two seconds behind Deputy Bliss, and he smelled the odor of marijuana during his initial contact with defendant's vehicle. There is no evidence that other people (except perhaps the driver of the lead vehicle) witnessed defendant's detention. Defendant was not detained for an independent investigatory purpose, and the initial contact between Deputy Bliss and defendant appears limited to the purpose of ensuring the deputies' safety.

Viewing the totality of the circumstances and weighing the interests of the government and defendant, we conclude the initial detention was justified for the limited purpose of protecting the deputies' safety. Contrary to defendant's claim, the prosecutor raised the officer safety justification in the trial court. After smelling the odor of marijuana coming from defendant's car and seeing marijuana in plain sight on the backseat, Deputy Fernandez could then prolong the detention to investigate and could lawfully search defendant's car. (*People v. Waxler* (2014) 224 Cal.App.4th 712, 719-721; *People v. Strasburg* (2007) 148 Cal.App.4th 1052, 1059-1060; *People v. Perez* (1989) 211 Cal.App.3d 1492, 1496.)

## DISPOSITION

The judgment is affirmed.

/S/

Mauro, J.

We concur:

/S/

Hull, Acting P. J.

/S/

Duarte, J.