Filed 9/16/20 P. v. Barney CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B299300 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA095484) |
| v. | |
| NOAH ROBERT BARNEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hector M. Guzman, Judge.  Affirmed.

A. William Bartz, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

Noah Robert Barney appeals from a judgment entered after a jury convicted him of driving or taking a vehicle without consent.  On appeal, Barney contends the trial court erred in denying his motion to suppress evidence pursuant to Penal Code section 1538.5[1] because he was unlawfully detained by sheriff's deputies.  Barney also argues the trial court violated his right to due process by failing to consider his ability to pay before imposing fines and fees, relying on this court's opinion in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Detention and Arrest*
At approximately 1:00 a.m. on November 25, 2016 Los Angeles County Sheriff's Deputies Brenda Serna and Veronica Fantom were on patrol in a marked patrol car heading northbound on Grevillea Avenue in Lennox.[2]  At that time Deputy Serna saw Barney holding the driver door handle of a white Honda Civic parked on the east side of the street.  As the patrol car approached, Barney immediately started walking away from the vehicle.  Deputy Serna testified that based on her experience, Grevillea Avenue is a "hot spot" where "stolen vehicles might be left."  Further, the east side of Grevillea Avenue, where the Honda was parked, was a no-parking zone.  Deputy Serna drove up to within five to eight feet from Barney,

[1]    Further undesignated statutory references are to the Penal Code.

[2]    The factual background is taken from Deputy Serna's testimony at the suppression hearing.

who was by then standing next to the trunk of the Honda, trying to walk away. She asked Barney if the vehicle was his, to which Barney responded he "didn't know who the vehicle belonged to." Deputies Serna and Fantom then detained Barney to conduct a vehicle burglary investigation.

After the deputies exited their vehicle, Deputy Fantom "grabbed [Barney's] arms and put them behind his back" to search him. As Deputy Fantom grabbed Barney's wrists, she saw he was holding Honda car keys in his hand. The deputies retrieved the keys, and Deputy Serna pressed the key fob, which opened the Honda.

The deputies detained Barney and placed him in the back seat of their patrol car, without handcuffs. Deputy Serna then ran the Honda's vehicle identification number over her police radio and learned the vehicle had been reported stolen. While Serna was standing outside the patrol car, she overheard Barney say he "stole the car." Barney's statement was not in response to a question from either deputy. At this point neither deputy had read Barney his *Miranda* rights.[3]

Deputy Serna called a company to tow the car after unsuccessfully attempting to reach the owner of the car. As part of an inventory search, Deputy Serna searched the Honda and observed a work identification card with a photograph of Barney on the driver's seat. The deputies arrested Barney.

B. *Barney's Motion To Suppress*

On May 9, 2018 Barney filed a motion to suppress his statements and other evidence obtained as a result of his

---

[3]     *Miranda  v. Arizona* (1966) 384 U.S. 436.

3

detention.  (§ 1538.5.)  The People filed a written opposition.
After hearing argument of counsel, the trial court denied the
motion, explaining Deputy Serna had information the street was
a "hot spot" for stolen vehicles, it was 1:00 in the morning, the
vehicle was parked in a no-parking zone, Barney was "testing the
door handle" of the vehicle, he started to walk away when the
patrol car approached, and he stated in response to the deputies'
inquiry that he did not know to whom the car belonged.  In
addition, once Barney was detained, the deputies performed a
patdown search and found him holding the keys to the vehicle,
the vehicle's vehicle identification number showed the vehicle
was stolen, and Barney spontaneously admitted he stole the
vehicle.

C.    *The Verdict and Sentencing*
        The jury found Barney guilty of driving or taking a vehicle
without consent (Veh. Code, § 10851).  Barney admitted he had
suffered a prior conviction of the unlawful driving or taking of a
vehicle (Pen. Code, § 666.5).  The trial court sentenced Barney
pursuant to section 666.5, subdivision (a), to the upper term of
four years in state prison.  The court imposed a $40 court
operations assessment (§ 1465.8, subd. (a)(1)), a $30 criminal
conviction assessment (Gov. Code, § 70373), a $10 crime
prevention fund fine (Pen. Code, § 1202.5), a $300 restitution fine
(*id.*, § 1202.4, subd. (b)), and a parole/postrelease supervision
restitution fine in the same amount, which the court stayed (*id.*,
§ 1202.45).  Barney did not object to imposition of the fines and
assessments or raise his inability to pay.
        Barney timely appealed.

4

# DISCUSSION

A.  *Standard of Review*

"In reviewing the trial court's suppression ruling, we defer to its factual findings if supported by substantial evidence.  We independently assess the legal question of whether the challenged search or seizure satisfies the Fourth Amendment." (*People v. Brown* (2015) 61 Cal.4th 968, 975 (*Brown*); accord, *People v. Suff* (2014) 58 Cal.4th 1013, 1053-1054 (*Suff*).)  We determine whether relevant evidence obtained from an asserted unlawful search or seizure must be excluded by deciding whether exclusion is mandated by the federal Constitution.  (Cal. Const., art. I, § 28; *In re Randy G.* (2001) 26 Cal.4th 556, 561-562; see *People v. Camacho* (2000) 23 Cal.4th 824, 830.)

B.  *The Trial Court Properly Denied Barney's Motion To Suppress*

For purposes of determining whether a search or seizure violates the Fourth Amendment, "[p]olice contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty."  (*In re Manuel G.* (1997) 16 Cal.4th 805, 821; accord, *People v. Steele* (2016) 246 Cal.App.4th 1110, 1115.)  Consensual encounters in which a person voluntarily answers questions posed by a police officer in a public place "present no constitutional concerns and do not require justification."  (*Brown, supra*, 61 Cal.4th at p. 974.)

5

By contrast, a detention is only reasonable under the Fourth Amendment if "'"the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity."'" (*Suff, supra*, 58 Cal.4th at pp. 1053-1054; accord, *People v. Souza* (1994) 9 Cal.4th 224, 231 (*Souza*); see *Terry v. Ohio* (1968) 392 U.S. 1, 21-22.)  A reasonable suspicion sufficient to support an investigative stop and detention requires more than "'a mere "hunch"'" but "'"considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause . . . .'" (*Brown, supra*, 61 Cal.4th at p. 981; accord, *Navarette v. California* (2014) 572 U.S. 393.)  A defendant may move to suppress evidence under section 1538.5 on the ground a search or seizure without a warrant was unreasonable.  (*Suff*, at p. 1053.)

Barney contends a person holding the handle of a vehicle and then stating he does not know to whom the vehicle belongs provides an officer at most a hunch the person was involved in criminal activity, which is not sufficient for a detention.  But Deputy Serna also based her detention of Barney on the fact she and Deputy Fantom encountered Barney late at night; the Honda was located in a "hot spot" for parking stolen vehicles; and as Deputy Serna's patrol car approached Barney, he "immediately" let go of the handle and walked away.

The facts here mirror those in *Souza, supra*, 9 Cal.4th at page 228, in which an officer observed the defendant at 3:00 a.m. talking to the occupants of a car parked in near-total darkness in a high crime residential area where the officer had recently made a burglary arrest.  Suspecting an automobile burglary was in

progress, the officer shined his patrol car's spotlight on the vehicle, causing the occupants of the car to duck down and the defendant to run off; the officer then pursued the defendant and detained him. (*Ibid*.) The Supreme Court concluded the brief investigative detention in which the officer conducted a patdown search was justified "to enable the officer to resolve the ambiguity in the situation and to find out whether the activity was in fact legal or illegal." (*Id*. at p. 242.) The Court explained the area's reputation for criminal activity and the late hour were both relevant factors in assessing the validity of the detention. (*Id*. at pp. 240-241.) The Court concluded the totality of the circumstances, including the "evasive conduct by the occupants and defendant's sudden flight," coupled with the car being parked in total darkness in a high crime area late at night, supported the detention. (*Id*. at p. 242; see *People v. Osborne* (2009) 175 Cal.App.4th 1052, 1059 [detention of defendant justified where he was observed standing by an open car trunk holding loose wiring, then he quickly closed the trunk and walked away as police car approached, and then he sat down in the car with tools and exposed wiring inside].)

As the trial court here explained, "Normally people who don't know who the car belongs to aren't testing the door handle." Deputies Serna and Fantom reasonably inferred from Barney's conduct and attempted flight, the late hour, and that the vehicle was parked in an area known for parking stolen vehicles that Barney may have been involved in criminal activity, that is, theft of the vehicle. (*Suff, supra*, 58 Cal.4th at pp. 1053-1054; *Souza, supra*, 9 Cal.4th at pp. 231, 240-241.) As the Supreme Court observed in *Brown, supra*, 61 Cal.4th at page 986, "An officer 'who lacks the precise level of information necessary for probable

7

cause to arrest' is not constitutionally required to 'simply shrug his [or her] shoulders and allow a crime to occur or a criminal to escape.'"

C.  *Remand Is Not Warranted for an Ability-to-pay Hearing on the Fines and Assessments Imposed by the Trial Court*

Barney contends he is entitled to an ability-to-pay hearing as to the fines and fees imposed by the trial court, relying on this court's opinion in *Dueñas, supra*, 30 Cal.App.5th 1157.  Barney acknowledges *Dueñas* was filed on January 8, 2019, 20 days before his sentencing hearing, but he argues forfeiture should not apply because imposition of the fines and fees implicates his fundamental constitutional rights.  Barney also argues *Dueñas* was not final before his sentencing because the remittitur  was not issued until March 19, 2019.  Neither contention has merit.

In *Dueñas*, this court concluded "the assessment provisions of Government Code section 70373 and Penal Code section 1465.8, if imposed without a determination that the defendant is able to pay, are . . . fundamentally unfair; imposing these assessments upon indigent defendants without a determination that they have the present ability to pay violates due process under both the United States Constitution and the California Constitution." (*Dueñas, supra*, 30 Cal.App.5th at p. 1168; accord, *People v. Belloso* (2019) 42 Cal.App.5th 647, 654-655 (*Belloso*), review granted Mar. 11, 2020, S259755.)[4]  In contrast to court

---

[4]  Several Courts of Appeal have applied this court's analysis in *Dueñas* (e.g., *People v. Santos* (2019) 38 Cal.App.5th 923, 929-934; *People v. Kopp* (2019) 38 Cal.App.5th 47, 95-96, review granted Nov. 13, 2019, S257844 [applying due process analysis to

assessments, a restitution fine under section 1202.4, subdivision (b), "is intended to be, and is recognized as, additional punishment for a crime." (*Dueñas*, at p. 1169; accord, *Belloso*, at p. 655.)[5]  Section 1202.4, subdivision (c), expressly provides a defendant's inability to pay a restitution fine may not be considered as a "compelling and extraordinary reason" not to

court assessments]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030-1035), or partially followed *Dueñas* (e.g., *People v. Valles* (2020) 49 Cal.App.5th 156, 162-163, review granted July 22, 2020, S262757 [concluding due process requires ability-to-pay hearing before imposition of court facilities fee, not restitution fines]).  Other courts have rejected this court's due process analysis (e.g., *People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279-281; *People v. Hicks* (2019) 40 Cal.App.5th 320, 326, review granted Nov. 26, 2019, S258946), or concluded the imposition of fines and fees should be analyzed under the excessive fines clause of the Eighth Amendment (e.g., *People v. Cowan* (2020) 47 Cal.App.5th 32, 42, review granted June 17, 2020, S261952; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1061; *Kopp*, at pp. 96-97 [applying excessive fines analysis to restitution fines]).  The Supreme Court granted review of the decision in *Kopp* to decide the following issues: "Must a court consider a defendant's ability to pay before imposing or executing fines, fees, and assessments?  If so, which party bears the burden of proof regarding defendant's inability to pay?"  (Supreme Ct. Minutes, Nov. 13, 2019, p. 1622; see *Kopp, supra*, 38  Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

[5]     Our analysis of restitution fines under section 1202.4, subdivision (b), also applies to parole revocation fines under section 1202.45, because these fines must be imposed "in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4."  (§ 1202.45, subd. (a).)

impose the statutory minimum fine.  However, as this court held in *Dueñas*, to avoid the serious constitutional questions raised by imposition of such a fine on an indigent defendant, "although the trial court is required by . . . section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine."  (*Dueñas*, at p. 1172; accord, *Belloso*, at p. 655.)

In *People v. Castellano* (2019) 33 Cal.App.5th 485, 489 (*Castellano*), we held a defendant's failure to object to the imposition of fines and fees before *Dueñas* was filed does not constitute forfeiture of that issue.  As we explained, "[N]o California court prior to *Dueñas* had held it was unconstitutional to impose fines, fees or assessments without a determination of the defendant's ability to pay. . . .  When, as here, the defendant's challenge on direct appeal is based on a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial, reviewing courts have declined to find forfeiture."  (*Castellano*, at p. 489; accord, *Belloso, supra*, 42 Cal.App.5th at p. 662; *People v. Santos* (2019) 38 Cal.App.5th 923, 931-932; *People v. Johnson* (2019) 35 Cal.App.5th 134, 137-138; contra, *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 464 [defendant forfeited challenge by not objecting to the assessments and restitution fine at sentencing]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1154 [same].)

The People contend and we agree Barney forfeited his challenge notwithstanding our decision in *Castellano* because he was sentenced 20 days after *Dueñas* was decided.  Unlike *Castellano*, Barney's challenge on appeal is not "based on a newly announced constitutional principle that could not reasonably

have been anticipated at the time of trial." (*Castellano, supra*, 33 Cal.App.5th at p. 489.) Additionally, there are no special circumstances or legal issues that would warrant us not to exercise our discretion to find forfeiture. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["application of the forfeiture rule is not automatic," although "the appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"]; *Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199, 215 ["'[N]either forfeiture nor application of the forfeiture rule is automatic.'"].)

Barney has also failed to present any authority, nor is there any, for his contention forfeiture should not apply until issuance of the remittitur with directions to the trial court. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 ["If a party's briefs do not provide legal argument and citation to authority on each point raised, "'the court may treat it as waived, and pass it without consideration."'"]; *In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 227 ["'Issues not supported by citation to legal authority are subject to forfeiture.'"].)

## DISPOSITION

The judgment is affirmed.


FEUER, J.

We concur:


PERLUSS, P. J.          SEGAL, J.

11